TEXAS PRINTING AND LITHOGRAPHING CO. v. A. B. SMITH.

(No. 3150.)

APPEAL from Tarrant County. Opinion by WILLSON, J.

HUNTER, STEWART & DUNKLIN and DREW PRUITT, counsel for appellant.

BALL, WYNNE & McCART, counsel for appellee.

§ 4. *Subscription contract; when material alteration of will discharge subscriber; case stated.* This is a suit by appellant to recover of appellee $1,000 upon a subscription contract, which contract reads as follows: "April 16, 1888. We, whose names are hereto subscribed, agree among ourselves to form a private corporation under the laws of the state of Texas, to be named the 'Texas Printing and Lithographing Company,' to be chartered with an authorized capital stock of $100,000. And whenever as much of said stock has been subscribed as $20,000, we, each for himself, agree to pay to said company, whose charter shall then be filed, the amount set opposite his name in such instalments as the board of directors shall require. The purpose of said corpora-

tion shall be the transaction of a printing and publishing business, and in connection therewith the sale of goods, wares and merchandise of a stationery and blank-book manufacturing business, and said business shall be located at the lower end of Main street, Fort Worth." This contract was signed by appellee for the sum of $1,000, and was signed by various other parties for other sums. At the time it was signed by appellee it had been signed by several others, among them being the following: "The Fort Worth Printing House, J. K. Millican, manager," for $8,000. Appellee specifically pleaded under oath and conclusively proved on the trial of the case that after he had signed said contract it had been altered without his knowledge or consent by erasing the words "The Fort Worth Printing House" and the word "Manager" in said subscription for $8,000, thereby changing the said subscription so as to make it the obligation of J. K. Millican individually, and no longer the obligation of the Fort Worth Printing House. It was proved further that said alteration was made by appellant company on the day that said company organized. With respect to said alteration the trial judge instructed the jury as follows: "If you believe from the evidence in this case that said alteration was made by plaintiff, or its authorized agent, after the time defendant signed and before this suit was brought, and that it was altered without the consent or knowledge of defendant, then you will find for the defendant." In accordance with said instruction and with the evidence, verdict and judgment were rendered for the defendant.

It is a general rule that a wilful and material alteration of a written instrument, made by one of the parties to it, after execution, and without the authority or consent of another party to it, will avoid such instrument as to the non-consenting party. [1 Amer. & Eng. Enc. Law, 502; 2 Civil Cas. Ct. App., § 130; 3 Civil Cas. Ct. App.,

§ 16; Harper v. Stroud, 41 Tex. 367.] Another general rule is that any change in the personality, number or relations of the parties to an instrument is a material alteration. [2 Daniel, Neg. Inst., § 1387; 1 Amer. & Eng. Enc. Law, 506, and cases cited in notes; Harper v. Stroud, 41 Tex. 367; Park v. Glover, 23 Tex. 469.] These rules are said to be founded on reasons of public policy, looking to the preservation intact of instruments of evidence for the benefit of all parties interested therein, and the test as to whether the alteration be prejudicial to the maker is not recognized as a sound one. [Harper v. Stroud, 41 Tex. 367.] Applying these general rules to the case before us, we must say that the charge of the trial judge, above quoted, is correct, and that there is no error in the judgment. We can perceive no good reason for denying the application of said general rules to the facts of this case. While the instrument in writing in controversy constitutes a several obligation against each subscriber thereto, still it is the obligation of all the parties thereto, and the alteration made therein made it speak a language different in legal effect from that which it originally spoke. And after being so altered it was a different instrument in writing in its legal effect as to one of the original subscribers thereto from that it was when signed by appellee. After such alteration it was no longer the same instrument as to the Fort Worth Printing House, nor as to J. K. Millican, for by said alteration the obligation of the latter was substituted for that of the former. This view of the case we believe to be in harmony with the weight of authority and with the decisions of the supreme court of this state. Appellant has cited us to one authority which holds a contrary view, that is, Whittlesey v. Frantz, 74 N. Y. 456, decided by the New York court of appeals. That decision supports the doctrine contended for by counsel for appellant, and to our minds the reasons and justice of the decision are strong; and

were it not that we believe the weight of authority to be against it, we would be inclined to follow that decision.   But, as was said in Harper v. Stroud, *supra*, "We cannot mistake the settled rules of law because their application may appear somewhat harsh, but whenever they apply they must, for the sake of uniformity and certainty, be rigidly adhered to."

October 23, 1889.                                      Affirmed.