BOLT et al. v. STATE SAVINGS BANK OF MANCHESTER, IOWA. (No. 8221.)

(Court of Civil Appeals of Texas. Ft. Worth. July 3, 1915. Rehearing Denied Oct. 16, 1915.)

1. ALTERATION OF INSTRUMENTS ⬡20—BILLS AND NOTES ⬡378—BONA FIDE PURCHASERS—DEFENSES—ALTERATION.

Any change by a party thereto without the consent of the opposite party in the personality, number, or relation of the parties to an instrument constitutes a material alteration, which will avoid the instrument, even in the hands of an innocent purchaser.

[Ed. Note.—For other cases, see Alteration of Instruments, Cent. Dig. §§ 158–189; Dec. Dig. ⬡20; Bills and Notes, Cent. Dig. §§ 985–992; Dec. Dig. ⬡378.]

2. PLEADING ⬡205—DEMURRER—SPECIAL EXCEPTIONS.

Where, in an action on a note, the fourth paragraph of the answer alleged that the name of V. was added to the note after defendants signed it, that V. never signed the note and hence the note sued on was not the obligation of defendants, and that the note had been materially altered since its execution by defendants, an exception stating that plaintiff "specially excepts to the fourth section of said answer, * * * for the reason that the same as pleaded, constitutes no legal defense," though special in the sense that it pointed out the particular paragraph of the answer to which it was directed, amounted to no more than a general demurrer, as it set up no specific reason why the answer failed to set up a defense.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 491–493, 495, 496, 498–510; Dec. Dig. ⬡205.]

3. PLEADING ⬡34, 205—CONSTRUCTION—DEMURRER.

As against a general demurrer, such paragraph of the answer was good, since, in passing

upon a pleading as against a general demurrer, the court must consider everything as properly alleged which by any reasonable construction may be embraced within the allegations made, and the allegations that the alteration was not made with defendant's consent, and that it was made by a party to the note, might be implied, if necessary.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 5½, 66–74, 491–493, 495, 496, 498–510; Dec. Dig. ⬡34, 205.]

4. ALTERATION OF INSTRUMENTS ⬡25—ACTIONS ON NOTES—PLEADING.

If a material alteration in a note after its execution was made with the consent of the makers or ratified by them, plaintiff, suing upon the note, should have presented such consent or ratification by a proper plea, it being in the nature of a plea of confession and avoidance, and the same was true if the alteration was not made by a party to the suit.

[Ed. Note.—For other cases, see Alteration of Instruments, Cent. Dig. §§ 216–229; Dec. Dig. ⬡25.]

5. APPEAL AND ERROR ⬡1050—HARMLESS ERROR — ADMISSION OF IMMATERIAL EVIDENCE.

Though, in an action by a bank on a note purchased by its president, his testimony as to the extent of his powers might be objectionable, an inquiry into his powers was not apparently material, as the bank, by suing upon the note, ratified his act in purchasing it.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1068, 1069, 4153–4157, 4166; Dec. Dig. ⬡1050.]

6. TRIAL ⬡85—RECEPTION OF EVIDENCE—OBJECTIONS TO EVIDENCE GOOD IN PART.

Assignments of error complaining of the overruling of objections to a witness' answers must be overruled, where a part at least of the answers was admissible, and the objections went to the entire answers.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 222, 223–225; Dec. Dig. ⬡85.]

7. SALES ⬡124—RESCISSION FOR FRAUD—RETURN OF PROPERTY RECEIVED.

Persons induced by fraudulent and material misrepresentations to purchase a horse could sue for a rescission of the contract of sale, but must first return the horse or show good cause for their failure so to do.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 303–312; Dec. Dig. ⬡124.]

8. EVIDENCE ⬡434—SALES ⬡355—PAROL EVIDENCE TO VARY WRITING — PROOF OF CONSIDERATION.

A purchaser of a chattel, when sued for the purchase price, may, in support of a plea of failure of consideration, rely upon material misrepresentations by the seller concerning the chattel, either express or implied, which were relied upon by him, and parol proof of such misrepresentations is not objectionable as varying the terms of the note given for the purchase price, as the consideration is always open to proof.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2005–2020; Dec. Dig. ⬡434; Sales, Cent. Dig. §§ 1025–1043; Dec. Dig. ⬡355.]

9. SALES ⬡428 — ACTION FOR PRICE — DEFENSES—MISREPRESENTATIONS.

Such misrepresentations can be invoked as a defense, not upon the theory of fraud and deceit practiced upon the purchaser, but because they are in law warranties and constitute a part of the contract of sale of which the note was also a part, and, if misrepresentations are war-

ranties, they do not cease to be such, though fraudulently made.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1214–1223; Dec. Dig. ☞428.]

**10. EVIDENCE ☞400 — PAROL EVIDENCE TO VARY WRITING.**

A seller may by a written contract with a buyer limit his warranty of the article sold, and, in the absence of fraud, accident, or mistake, parol evidence is not admissible to vary or contradict this contract.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1778–1793; Dec. Dig. ☞400.]

**11. EVIDENCE ☞441—EXCLUSION OF ORAL REPRESENTATIONS.**

If a written warranty by the seller of a horse was executed as a part of the contract of sale, and spoke the real agreement of the parties, a stipulation therein that it was the only contract or guaranty excluded any warranty not contained therein, and operated to exclude evidence that the buyers were induced to buy by false and fraudulent representations that the horse was young and sound.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1719, 1723–1763, 1765–1845, 2030–2047; Dec. Dig. ☞441.]

**12. SALES ☞251—ACTION FOR PRICE—DEFENSES—MISREPRESENTATIONS.**

In the absence of a written warranty constituting a part of a contract of sale, proof of material misrepresentations inducing the purchaser to buy is admissible, and it is immaterial whether such misrepresentations were fraudulently made, as they could be invoked and considered as warranties and equally binding upon the sellers, whether made in good faith or fraudulently.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 710; Dec. Dig. ☞251.]

**13. SALES ☞124—RESCISSION FOR FRAUD—RETURN OF PROPERTY RECEIVED.**

While ordinarily, where a purchaser elects to rescind, he must return the property purchased, yet he need not do so if it be worthless.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 303–312; Dec. Dig. ☞124.]

**14. CONTRACTS ☞10—WARRANTIES — MEETING OF MINDS.**

Where a warranty by the seller of a horse was not executed at the time of the execution of a note for the purchase price, but, without the knowledge and consent of the buyers, was merely deposited with a local bank by an agent of the seller, it had no binding effect; there being no meeting of the minds, and the seller having no legal right to impose a measure of damages to which the buyers never agreed.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 21–40; Dec. Dig. ☞10.]

**15. SALES ☞38—WARRANTIES—FRAUD.**

Though a warranty was executed at the time of the execution of a note for the purchase price of a horse, and therefore was a part of the contract of sale, its binding effect would be destroyed by extraneous fraud in the procurement of the note, as fraud sufficient to nullify the note would be equally as forceful as an avoidance of the warranty.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 65–77, 85; Dec. Dig. ☞38.]

Appeal from District Court, Nolan County; W. R. Spender, Special Judge.

Action by the State Savings Bank of Manchester, Iowa, against R. K. Bolt and others. Judgment for plaintiff, and defendants appeal. Reversed and remanded.

See, also, 145 S. W. 707.

Woodruff, Christian & Woodruff, of Sweetwater, for appellants. Beall & Douthit, of Sweetwater, for appellee.

CONNER, C. J. The State Savings Bank of Manchester, Iowa, instituted this suit against R. K. Bolt, C. Voss, and nine others to recover upon a promissory note which, with its interest, aggregated the sum of $3,646, at the date of the trial below. The note had been given for the purchase money of a horse that had been sold to Bolt and others by W. A. Lang & Co., to which company "or bearer" the note was made payable.

The defendants, among other things, answered, in substance, that the plaintiff bank was not the real owner of the note; that it had not paid any consideration therefor; and that the suit by it was really for the benefit of W. A. Lang & Co. The defendants further alleged that the note had been fraudulently procured by W. A. Lang & Co. by means of certain false and fraudulent representations relating to the condition and quality of the horse which were set up in the petition. Among other things, it was charged that the horse was represented to be sound and free from disease; that this representation was false; and that, in fact, the horse was badly diseased and wholly worthless, having died some time after the purchase. The defendants further alleged that the plaintiff bank, if, indeed, it was the owner of the note, had full notice of the fraud alleged at the time of its purchase, if any. They also alleged that the note had been fraudulently changed and altered since its execution by them by the addition of the name of C. Voss thereto. Other allegations and defenses need not be here mentioned.

The trial upon the issues indicated resulted in a judgment for the plaintiff bank, and the defendants have appealed.

Appellant's first assignment of error complains of the court's action in sustaining the plaintiff's exception to paragraphs 3 and 4 of the defendants' answer which set up forgery and alteration of the note upon which the suit was founded. The paragraphs of the answer mentioned are as follows:

"(3) Further answering herein, defendants say that the name of C. Voss, alleged to have been signed to the notes herein sued, is a forgery; that defendant C. Voss never at any time executed said notes or either of them, nor authorized any one else to sign or execute same for him or sign his name thereto; hence defendant C. Voss says that he is not liable on the notes herein sued on, and in this prays judgment of the court.

"(4) These defendants further say that the name of C. Voss was added to said notes after they had signed the same; that C. Voss never signed the notes these defendants executed at all; hence the notes herein sued on were not the obligations of these defendants; that said notes had been materially altered since the execution of same by defendants, if defendants executed same at all, which they deny. And of this pray judgment of the court."

To which the plaintiff urged the following exceptions, which were sustained by the court:

"Plaintiff especially excepts to the third section of defendant's said answer, and that part thereof attempting to set up the forgery of the name of C. Voss to the notes sued on herein, and because said C. Voss is no longer a party to this suit. Plaintiff specially excepts to the fourth section of said answer, and says that the same should be stricken out, for the reason that the same, as pleaded, constitutes no legal defense to the plaintiff's cause of action."

[1] While the authorities are not entirely harmonious, we think it may be stated that very generally, and particularly in this state, the rule is that any change by a party thereto, without the consent of the opposite party, in the personality, number, or relation of the parties to an instrument, constitutes a material alteration which will avoid the instrument, even in the hands of an innocent purchaser, and it was specifically held in Harper v. Stroud, 41 Tex. 367, that the fraudulent addition of a name to a promissory note by the holder without the consent of the other party to the note constituted a material alteration, the court there stating, among other things:

"We think the modern authorities, with but few exceptions, agree that the addition by the payee or holder of a name of a person as joint and several maker of a note, after it has been completed, issued, and negotiated, without the consent of the original makers, discharges them from liability on the note"—citing a number of authorities.

See, also, to the same effect, Daniel on Negotiable Instruments, vol. 1, §§ 806–809; Id. vol. 2, § 1373; Ford v. First Nat. Bank of Cameron, 34 S. W. 684; Matson v. Jarvis, 133 S. W. 941; Rhodes v. Turpin (Tenn.) 57 S. W. 354; Texas Printing & Lithographing Co. v. Smith, 14 S. W. 1074; Adams v. Faircloth, 97 S. W. 507.

[2-4] While appellee insists that the exceptions quoted are special, it seems quite manifest to us that they amount to no more than general demurrer. They are special alone in the sense that they point out the particular paragraphs of the defendants' answer to which the complaint is directed, but no specific reason is set up why the answers fail to set up a defense, and, as against a general demurrer, we think the answers were good, and that the court erred in his ruling. The answer made by the appellee in its brief is to the effect that there was no error in the ruling complained of, for the reason that "C. Voss was not a party to the suit, by reason of a formal dismissal, which was evident of record," and that "a forgery neither adds to nor takes from, and could not in any way affect the liability on the obligations of appellants on the notes." It must be conceded, we think, that neither the exceptions nor the reply of appellee gives light on the specific reasoning of the trial court which led to the ruling under consideration. The undoubted rule is that, in passing upon a pleading as against a general demurrer, it is the duty of the court to consider everything as properly alleged which by any reasonable construction may be embraced within the allegations made. See Gibbens v. Bourland, 145 S. W. 274; Hoechten v. Standard Home Co., 157 S. W. 1191.

In the fourth paragraph of the defendants' special answer it was distinctly alleged that the alteration complained of had been made since the execution of the note by the defendants, and that the alteration consisted of the addition of the name of C. Voss. It may possibly have been thought that it should have been alleged that the alteration had not been made with the consent of the defendants, and had been made by a party to the note, but appellee urged no such objections in its exceptions, nor here, and, as against the general demurrer, we think these allegations, if necessary, are to be implied. If, in fact, the material alteration was made after the execution of the note, as alleged, and the defendants consented thereto, or ratified it, the answer setting up such consent or ratification would be in the nature of a plea of confession and avoidance, which it would be necessary for the plaintiff to have presented by proper plea, and the same general proposition seems applicable to a want of a specific allegation that the alteration was made by a party to the suit. It is said in 2 Cyc. p. 232, note 27:

"Upon an alteration after execution the presumption is that it was made by a party claiming under the instrument. Therefore it is not necessary that the answer should allege what is thus presumed."

On the whole, we conclude, as before stated, that the court erred in the ruling discussed, and that because thereof the judgment must be reversed, and the cause remanded.

[5, 6] The numerous remaining assignments, we think, may be disposed of in a brief and general way. L. Matthews testified that he was the president of the plaintiff bank, and, as such, had purchased the note in controversy; that he was the only officer of the bank who had anything to do with the purchase; that he had full power to make the purchase; and that no other officer of the bank knew anything about the circumstances of the purchase. While, under certain circumstances, it might be objectionable for a witness to state the extent of his powers, yet in the present case, whatever may have been the powers of the president originally, the bank sues upon the note, thus ratifying the act of the president in the purchase, and an inquiry into his original powers is not now apparently material. It may be, and possibly should be, said to be objectionable for the witness to have undertaken to state that he knew the knowledge possessed by other officers of the bank, or to state, either directly or indirectly, the contents of the letters or written communication upon which the plaintiff relied as showing its good faith in the purchase, without

accounting for their nonproduction; yet the objections urged went to the entire answers, part of which, at least, we think, was admissible, and, the objection not being good as to the whole, the assignments relating to these questions must be overruled.

[7-9] The fifth, ninth, tenth, eleventh, thirteenth, fifteenth, seventeenth, and eighteenth assignments of error in some form relate to a warranty purporting to have been executed by W. A. Lang & Co., and, among other things, pleaded by the defendants. In view of the fact that the defendants did so plead the warranty, the majority wish to express the view that, if through fraudulent and material misrepresentations the purchasers were induced to purchase the horse, they could have sued for a rescission of the contract of sale. If they had elected to pursue that remedy, it would have been incumbent upon them to first return the horse, or else show good cause for their failure so to do. But they did not elect that remedy. They elected to stand upon the contract and plead a failure of consideration of the note. According to the weight of the authorities, a purchaser of a chattel, when sued for the purchase price, may, in support of a plea of failure of consideration, rely upon material misrepresentations by the seller, either express or implied, concerning the chattel, which were relied upon by the purchaser, and parol proof of such misrepresentations is not objectionable as varying the terms of the promissory note given for the purchase price of the article, since it is but proof of the consideration of the note; the consideration of a conveyance being always open to proof. 3 Ruling Case Law, p. 947, § 143. But such misrepresentations so relied upon by the purchaser can be invoked by him as such a defense, not upon the theory of fraud and deceit practiced upon him, but because they are in law warranties, and constitute a part and parcel of the contract of sale, of which the purchaser's note was also a part. Essentially the purchaser is allowed to offset damages for breach of the seller's contract against the seller's demand for the purchase price of the chattel. If such misrepresentations are warranties, they do not cease to be such, even though they were fraudulently made. 35 Cyc. 378, 379. By reason of the fact that such misrepresentations are warranties, it is held in some of the states that they cannot be pleaded as constituting a failure of consideration of the contract for the purchase price, but, in order to be available to the purchaser when he has elected to abide by the contract as made and is sued for the purchase price, must be pleaded as a counterclaim for damages. See Pryor v. Ludden & Bates Southern Music House, 134 Ga. 288, 67 S. E. 654, 28 L. R. A. (N. S.) 267, and notes.

[10] It is also well settled that the seller may, by written contract with the buyer, limit his warranty of the article sold, and that, in the absence of pleading and proof that, though fraud, accident, or mistake in the drafting or in the execution of the contract, it does not speak the real agreement of the parties, parol evidence is not admissible to vary or contradict its terms. 35 Cyc. 379.

[11] If the written warranty given by the seller of the horse and pleaded by defendants was executed as a part of the contract of sale, and if it speaks the real agreement of the parties thereto, then the stipulation therein reading, "This is the only contract or guarantee given us," would, even if this suit was by the payees of the note, exclude any warranty not contained in that instrument, and hence would operate to exclude any evidence that the defendants were induced to buy the horse by representations that the horse was sound and young, etc., and that the same were false and fraudulently made.

[12] Even if such written warranty was not a part of the contract of sale, while proof of material misrepresentations which induced defendants to buy would be admissible against plaintiff if it was not a bona fide holder of the note for value and before maturity, yet whether such misrepresentations were fraudulently made would be immaterial, since they could be invoked and considered as warranties, and therefore equally as binding upon the sellers, whether made in good faith or fraudulently.

But on this subject the writer wishes to say that the warranty extends only to the general fitness and capacity of the horse to perform the purpose for which he had been purchased. Lang & Co. were not made parties, nor any recovery against them sought. The plaintiff bank was not a party to the warranty, and no recovery on the warranty was prayed for, and the purpose of the defendants in pleading the warranty is not very clear. But the pleading as a whole clearly manifests that the defendants were not "standing on the contract" of seeking its enforcement in any of its phases, but, on the contrary, were repudiating the contract in toto on the ground of fraud. The plaintiff bank, however, seems to have availed itself of the warranty in support of the contention that the warranty provided the only measure of damages available to the defendants in this case, and the writer thinks perhaps it will be sufficient to say on this subject in a general way that, in the absence of fraud, if the representations relied upon amount merely to a mistaken assertion of the horse's condition and capacity as asserted in the warranty, then the warranty, it seems under the following cases, will constitute the defendants' measure of damages, and their only relief would be to avail themselves of the remedy the warranty provides, which was the return of the horse and the acceptance of another in his place. See Oltmanns Bros. v. Poland, 142 S. W. 653; Wisdom v. Nichols,

etc., Co., (Ky.) 97 S. W. 18; Shearer v. Gaar, etc., Co., 41 Tex. Civ. App. 39, 90 S. W. 684; Walters v. Akers (Ky.) 101 S. W. 1179; Holbert v. Sanzenbacher, 159 S. W. 1054; Haynes v. Plano Mfg. Co., 36 Tex. Civ. App. 567, 82 S. W. 532; Crouch v. Leake, 108 Ark. 322, 157 S. W. 390, 50 L. R. A. (N. S.) 774. But the writer thinks that we are prevented from now so declaring the law, for the reason that defendants alleged fraud in the procurement of the note upon which the plaintiff sued that extended beyond the limits of the warranty, and, the jury in their verdict, in answer to special issues, expressly so found. In this view of the case the warranty will not prevent the relief sought by the defendants in this case in event it should be found that the plaintiff was not a purchaser before maturity and for value and without notice of fraud, for in such event the defendants might elect to affirm the contract and sue upon the warranty, or, as they do, seek to defeat the recovery upon the note by reason of the fraud committed in its procurement. As stated in Blythe v. Speake, 23 Tex. 430, quoting from the headnote:

"A party defrauded in a contract has his choice of remedies. He may stand to the bargain and recover damages for the fraud, or he may rescind the contract, return the thing bought, and recover back what he has paid."

See, also, cases cited in 15 Ency. Dig. Tex. Rep. 453, § C; 3 Ruling Case Law, p. 947, § 143.

[13-15] In this connection it will perhaps be well to add that, while ordinarily, where the purchaser elects to rescind, he must return the property purchased, yet he need not do so if it be worthless. Wintz v. Morrison, 17 Tex. 372, 67 Am. Dec. 658. It should perhaps be further said that the defendants, among other things, pleaded to the effect that the warranty, in fact, had not been executed at the time of the execution of the note; that, without their knowledge and consent, it had been merely deposited with a local bank by the agent of W. A. Lang & Co. If this allegation be true, the warranty would have no binding effect in any event; as in such case there would be no meeting of the minds of both parties to the contract, and the vendor would have no legal right to impose a measure of damages to which the defendants never agreed. Even should it be found, contrary to the contention of the defendants, that the warranty was executed at the time of the execution of the note, and therefore part of the contract declared upon, then also its binding effect would be destroyed by the establishment of extraneous fraud in the procurement of the note; for fraud sufficient to nullify the note would be equally as forceful to operate as an avoidance of the warranty part of the same contract.

No other assignment presents questions we think it necessary to discuss, but, believing that what we have said constitutes a suffi-cient guide upon another trial, it is ordered that for the errors first discussed the judgment must be reversed, and the cause remanded.

---

⊚⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes