INTERNATIONAL BANK OF COALGATE v. MULLEN & MULLEN *et al.*

No. 1151.   Opinion Filed November 14, 1911.

Rehearing Denied December 12, 1911.

(120 Pac. 257.)

1.   **USURY—What Law Governs—Domestic Corporations.**   A domestic corporation in the Indian Territory, prior to statehood, was governed by chapter 109, Mansf. Dig. (Ind. Ter. Ann. St. 1899, c. 50), which had been extended over the Indian Territory by Act Cong. May 2, 1890, c. 182, sec. 31, 26 Stat. 94.

2.   **BANKS AND BANKING—Loans—Note—Usury.**   A note between a bank, organized as a domestic corporation in the Indian Teritory under the laws in force prior to statehood, and an individual, providing for a rate of interest greater than ten per cent. per annum, was void both as to principal and interest.

3.   **ALTERATION OF INSTRUMENTS—Alteration of Note—Effect.**   A material alteration of a note by a payee, or with his consent, without the consent of the maker, avoids it against the maker.

4.   **SAME—Materiality.**   An alteration in a note, whereby the name of the payee was changed from International Bank, to W. C. Rudisill, without consent of the makers, was a material alteration, and rendered such note void as to the makers.

(Syllabus by Robertson, C.)

*Error from District Court, Carter County; Stilwell H. Russell, Judge.*

Action by the International Bank of Coalgate against Mullen & Mullen and others.   Judgment for defendants, and plaintiff brings error.   Affirmed.

*G. T. Ralls,* for plaintiff in error.

*Cottingham & Bledsoe* and *H. A. Ledbetter,* for defendants in error.

Opinion by ROBERTSON, C.   This action was begun in the district court for the Southern District of Indian Territory, on November 14; 1906, to recover on three promissory notes, one

of which was executed by Mullen & Mullen, J. P. Mullen, J. S. Mullen, L. V. Mullen, and W. C. Rudisill, on December 4, 1905, in the sum of $2,040, in favor of the International Bank of Coalgate, with interest at eight per cent. per annum from maturity; the second was executed by Mullen & Mullen, J. P. Mullen, and J. S. Mullen, on December 2, 1905, in the sum of $1,000, in favor of W. C. Rudisill, with interest at eight per cent. per annum from maturity; the third note was executed by W. C. Rudisill, December 9, 1905, to the International Bank, in the sum of $512.50, with interest at eight per cent. per annum from maturity. The $1,000 note was executed by the Mullens and attached as collateral security to the $512.50 note of Rudisill to the International Bank, and was duly indorsed by Rudisill. Default was made in the payment of each note, and the plaintiff made demand for payment, on the makers of the same, and they refused to pay, except the sum of $350, which was credited on the $2,040 note on October 10, 1906. The defendants for answer to the complaint, among other things, denied that they executed the $2,040 note, and denied that they were indebted to plaintiff in any sum whatever, and alleged that the said contract was usurious and void, for the reason that' said bank reserved the sum of $40 for the use of said money for the period of 60 days; that the same amounted to and constituted interest at the rate of one per cent. per month for said period; that said contract was fraudulently and unlawfully entered into by and between the said defendant Rudisill and the plaintiff, and for that reason the same was void and not binding upon the defendants Mullen. And for further answer they allege that after said Mullens and each of them had signed said note, and before delivery of the same to the International Bank of Coalgate by said Rudisill, the same was materially altered by adding the name of W. C. Rudisill as joint maker; and the said Mullens for defense to the $1,000 note allege that when they signed the same it was payable to the International Bank and not to W. C. Rudisill, and that if the same is now payable to said Rudisill it is because the same has been materially altered, by erasing the name of the International Bank and inserting the

name of Rudisill, and that the said $1,000 note was given by them to be used by Rudisill as collateral security for a note of $512.50, executed by the said Rudisill to said Bank, and for no other purpose; that they never gave Rudisill, nor any one else, permission to alter said note, and that it is not the note they signed, etc. Said cause was tried to the court, without a jury, on the 7th day of May, 1909, and resulted in a judgment against the defendant Rudisill in the sum of $2,040, with interest, on the first note, and $512.50 with interest, on the second note, that plaintiff take nothing from the said defendants Mullen on any of said notes, to which judgment the plaintiff excepted and brings this appeal to reverse the same, and in its petition in error alleges, first, that the court erred in overruling the motion of the plaintiff in error for a new trial; second, that the court erred in finding the issues in favor of the defendants Mullen.

For convenience, the plaintiff in error will hereinafter be called plaintiff, and the defendants in error will be called defendants. The first assignment of error relied upon by the plaintiff is that the court erred in holding that the note for $2,040, described in the complaint, was usurious and void, and it argues that the International Bank was incorporated in October, 1905, as a domestic corporation under the act of Congress, putting in force in the Indian Territory certain laws of Arkansas; also that the forfeiture clause contained in chapter 109, Mansf. Dig. (Ind. T. Ann. St. 1899, c. 50), was not applicable to plaintiff, and that if the forfeiture law was in full force in the Indian Territory at the time the notes were executed the defendants had waived their right to the benefit thereof because of their failure to plead usury prior to statehood, and after statehood they failed to plead the Indian Territory law of usury, and that on failure to so plead said law the presumption obtained that the law in force in the Indian Territory was the same as the law in force in Oklahoma, and cites many authorities in support of that proposition.

· Plaintiff, by admitting that it is a domestic corporation, organized under and by virtue of the laws of the United States in force in the Indian Territory prior to statehood, thereby pre-

cludes itself from the plea that the forfeiture law of Arkansas does not apply. Had plaintiff been organized as a foreign corporation under the act of Congress of February 18, 1901, there might be a remote possibility that such a plea might be sustained, although we offer no opinion on that phase of the question at this time, as it is not before us for consideration. However, it is plain that provisions of chapter 109, Mansf. Dig. (Ind. T. Ann. St. 1899, c. 50), including the forfeiture clause, was in force in the Indian Territory prior to statehood, and that such law governed domestic corporations, such as plaintiff, in the matter of loaning money and charging interest.

This being true, the first question that challenges our attention is that of usury. If the $2,040 note is void and unenforceable on account of usury, then no further consideration need be given to it. The law applicable to this subject in this case, at the time suit was brought on said note, was chapter 109, Mansf. Dig. (Ind. T. Ann. St. 1899, c. 50), which had been extended over the Indian Territory by Act Cong. May 2, 1890, c. 182, sec. 31, 26 Stat. 94. Section 4732 of said chapter reads as follows:

"All contracts for greater rate of interest than 10% per annum shall be void as to principal and interest; but when no rate of interest is agreed upon, the rate shall be 6% per annum."

The evidence discloses without contradiction, that the $2,040 note, executed December 4, 1905, contained $40 as usurious interest. On page 43 of the record is found the following reference to the same:

"Q. What interest did you charge him for the use of $2,000 for the 60 days shown in the note? A. $40. Q. You charged him $40? A. Yes, sir. Q. What rate of interest does that figure, Mr. Eltzey? A. Well— Q. $40 for the use of $2,000 for 60 days? A. I don't remember. Q. We will give you a slip of paper and let you figure it. Mr. Cruce: That is a mere matter of calculation. Mr. Bledsoe: It is 12 per cent. A. Yes; 12 per cent. per annum."

Under the law in force at that time in the Indian Territory, this contract was void, and not enforceable against any of the makers, for the reason that a contract or note between a banking company, organized as a domestic corporation under the laws

in force in Indian Territory, and an individual, providing for a rate of interest greater than ten per cent. is void, both as to principal and interest. *Sulphur Bank & Trust Co. v. Medlock et al.,* 25 Okla. 73, 105 Pac. 321; *Brewer et al. v. Rust,* 20 Okla. 776, 95 Pac. 233; *Taylor v. Merrell,* 22 Okla. 18, 97 Pac. 571; chapter 109, Mansf. Dig. Ark. (Ind. T. Ann. St. 1899, c. 50).

Counsel for the plaintiff contends that the defendants are estopped from setting up the defense of usury, for the reason that they did not plead the same prior to statehood, and after statehood they failed to plead or prove the law that was in force in the Indian Territory at the time the note was made, and, in the absence of such pleading and proof, it must be presumed that the law is the same as that of Oklahoma, and cites many authorities in support of the contention. As a general proposition this would be the law, but unfortunately for counsel he overlooked the provision of the preamble and of section 1 of the Schedule of the Constitution of the state, which reads as follows:

"In order that no inconvenience may arise by reason of a change from the forms of government now existing in the Indian Territory and in the territory of Oklahoma, it is hereby declared as follows:

"Section 1. No existing rights, actions, suits, proceedings, contracts, or claims shall be affected by the change in the forms of government, but all shall continue as if no change in the forms of government had taken place. And all processes which may have been issued previous to the admission of the state into the Union under the authority of the laws in force in the Indian Territory shall be valid as if issued in the name of the state."

These provisions have been construed by the Supreme Court of this state, in *Blanchard v. Ezell,* 25 Okla. 434, 106 Pac. 960, where the following language was used:

"Section 1 of the schedule provides that 'no existing rights, actions, suits, proceedings, contracts or claims shall be affected by the change in the forms of government, but all shall continue as if no change in the forms of government had taken place.' The purpose of this section of the schedule is to preserve all rights already accrued, and either in action, or capable of being enforced by the ordinary remedies provided for this purpose, as effectively as if the Constitution had not been adopted. The language is broad enough to include all rights and claims what-

ever in their nature. No distinction is made between statutory rights and those existing at the common law, nor between those arising out of torts and those founded upon contract."

See, also, *Ex parte Bailey*, 20 Okla. 498, 94 Pac. 553.

This same question was construed in *St. L. & S. F. R. Co. v. Cundieff* (by the Circuit Court of Appeals), as found in 171 Fed. 319, 96 C. C. A. 211, as follows:

"It is insisted by the railroad company that the provision of the Constitution, to the effect that no existing rights, actions, suits, proceedings, etc., shall be affected by the change in the forms of government, does not relate to the procedure. We think this contention cannot be sustained. The rule of constitutional construction is that the ordinary and common meaning of the words used, in the light of other provisions of the Constitution, must be adopted. The preamble to section 1, of the schedule to the Constitution of Oklahoma, provides: 'In order that no inconvenience may arise by reason of a change from the forms of government now existing in the territory, etc., it is hereby declared as follows.' And then follows the provisions above referred to, together with other provisions, declaring process issued prior to the admission of the state, under the authority of the territory of Oklahoma, or under the authority of the laws in force in the Indian Territory, valid, and giving it the same force and effect as if issued in the name of the state. Construing all of these provisions together, we are of the opinion that they do not change, and were not intended to change, the method of the procedure in cases pending in the courts of Indian Territory and of the territory of Oklahoma, but that civil cases pending in the Indian Territory should, after statehood, continue under the law in force in the Indian Territory prior to statehood."

Thus it is seen that the defendants had a right to interpose the defense of usury in this case without pleading the law in force in the Indian Territory prior to statehood. At that time the defense of usury was one which the defendants had a right to interpose. It is plain, therefore, that the $2,040 note was a usurious contract, and cannot be enforced as against the defendants, and the trial court committed no error in so holding.

Defendants also claim that the $1,000 note is void, because materially altered by having changed the name of the payee after delivery. The $1,000 note, according to the testimony of Rudi-

sill, was made payable to the International Bank at the time it was signed by the defendants Mullen. Several days after the note had been discounted to the bank by Rudisill, and at the suggestion of the cashier of the bank, the words "International Bank" were erased, by drawing a pen through them, and the name of W. C. Rudisill was inserted in place of "The International Bank," and this was without the knowledge or consent of the defendants Mullen. On page 78 of the record is found the following testimony relative to the subject:

"Q. Now, the note for $1,000 was apparently made payable to the International Bank, and a line drawn through that, and the name of 'W. C. Rudisill' written above. When was that done? A. That was done subsequent to the execution of the note, but I don't remember just how long after. Q. When was it done with reference to the time that you negotiated or discounted the note to the bank? A. Well, it wasn't done any longer than three or four days afterwards. Q. After you had discounted the note? A. Yes. Q. At whose suggestion was it done, if at anybody's? A. Mr. Eltzey's. [Mr. Eltzey was cashier of the bank.] Q. What was the reason assigned for scratching out the name of the payee, if any, and writing in your name? A. Well, I presume the idea was to make it— Mr. Ralls: We object to this presumption. Q. What was said? A. There was a discussion brought up as to the negotiability of it as a collateral piece of paper, and to make it appear more easily transferable my name was put in as payee and subsequently indorsed by me. That was the discussion that brought it about. Q. As between you and the cashier of the bank? A. Yes, sir. Q. And that was done after you had actually delivered the note to the bank? A. Yes; and had received the money—some days afterwards; I don't remember just how long."

Mr. L. V. Mullen testified as follows:

"Q. I will ask you whether or not the words 'International Bank' were scratched out and the words 'W. C. Rudisill' written in at the time you signed them? A. There was nothing in there at all. Q. That is, it hadn't been altered? A. Not at all. Q. I will ask you, did you ever consent, or were you ever consulted about it, or did you ever consent to that change? A. I did not." (Record, page 91.)

Without doubt, this was a material alteration of the note sued on, and the authorities are practically unanimous that it is

a good defense to an action on a bill or note that there has been a material alteration of the name of the payee, such as that it has been been erased and another name inserted in its place, without the consent of the defendant. Joyce on Defenses to Commercial Paper, sec. 158. See, also, 2 Daniel on Negotiable Instruments, sec. 1378; 2 Cyc. 313; Am. & Eng. Enc. of Law (2d Ed.) p. 229; *Steele v. Spencer,* 1 Pet. 552, 7 L. Ed. 259; *Sneed v. Sabinal Mining & Milling Co.,* 71 Fed. 493, 18 C. C. A. 213; *Id.,* 73 Fed. 925, 20 C. C. A. 230; *Texas Prtg. Co. v. Smith,* (Tex. App.) 14 S. W. 1074; *Bell v. Mahin,* 69 Iowa, 408, 29 N. W. 331; *Horn v. Newton City Bank,* 32 Kan. 518, 4 Pac. 1022; *Erickson v. Oakland First Bank,* 44 Neb. 622, 62 N. W. 1078, 28 L. R. A. 577, 48 Am. St. Rep. 753; *Davis v. Bauer,* 41 Ohio St. 257; *Mackay & McDonald v. Dodge,* 5 Ala. 388; *Ford v. Cameron First Natl. Bank* (Tex. Civ. App.) 34 S. W. 684; *German Bank v. Dunn,* 62 Mo. 79; *Robinson v. Berryman,* 22 Mo. App. 509; *Broughton v. Fuller,* 9 Vt. 373; *Hoffman v. Planters' Natl. Bank,* 99 Va. 480, 39 S. E. 134; *First Natl. Bank v. Gridley,* 112 App. Div. 398, 98 N. Y. Supp. 445; *Casto et al. v. Evinger et al.,* 17 Ind. App. 298, 46 N. E. 648; *Richardson et al. v. Fellner et al.,* 9 Okla. 513, 60 Pac. 270; *Bank v. Baughman,* 27 Okla. 175, 111 Pac. 332.

The $2,040 note being void on account of usury, and the $1,000 note being void on account of material alteration, without the knowledge or consent of the payee, there remains nothing further in this case for this court to consider, and no error appearing in the record the judgment of the district court of Carter county should be affirmed.

By the Court: It is so ordered.

All the Justices concur.