## EVATT *et al* v. DULANEY *et al.*

No. 5042.  Opinion Filed August 3, 1915.

Rehearing Denied September 14, 1915.

(151 Pac. 607.)

1. **PRINCIPAL AND SURETY—Liability of Surety.**  A surety is bound only by the strict terms of his undertaking, and where he has assumed the burden without compensation, or without sharing in the benefits, he has the right to prescribe the exact terms upon which he will be bound; and where, in such case, the terms of the contract are changed without his consent, he is discharged, without regard to whether he is harmed or not by such change.  This rule does not apply when the surety receives compensation for becoming surety, or shares in the benefits of the contract.

2. **ALTERATION OF INSTRUMENTS—Effect.**  Any alteration in a written instrument, made after its execution and without the consent of the parties to be bound, which varies the legal effect of the instrument, or changes the rights or liabilities of the parties, although there is no fraud, vitiates the instrument.

3. **PRINCIPAL AND SURETY—Discharge of Sureties.**  Where a builder's contract provided that estimates of material and labor were to be made each Saturday evening by the contractor and owner, and the amount of these estimates were to be paid at such time, and this part of the contract was not observed, voluntary sureties on the bond to secure the performance of the contract are released.

4. **SAME.**  Where, in such case, at the time the contract was signed and the bond given, the contract was silent as to the time within which the building should be completed, but afterwards, and without the consent of the sureties, the time was limited to 60 days, **held**, that the sureties were thereby released.

.5. **PRINCIPAL AND SURETY — Obligations — Ratification of Alteration.**  Where a contract is altered by an unauthorized

Evatt et al. v. Dulaney et al.

person, but in his petition the plaintiff sets up as a breach of the contract a failure to perform the part of the contract so inserted without the authority, this amounts to a ratification, and the plaintiff cannot be heard to say that such alteration was unauthorized.

(Syllabus by Devereux, C.)

*Error from District Court, McClain County;*
*R. McMillan, Judge.*

Action by O. L. Dulaney and others against James R. Evatt and another. Judgment for plaintiffs, and defendants bring error. Reversed and remanded.

This was an action on a building contractor's bond, which reads as follows:

"Know all men by these presents that Bob White, as principal, and A. M. Hopping and J. R. Evatt, as securities, are jointly held and firmly bound to C. W. Hughes and O. L. Dulaney, in the full sum of one thousand and no/100 dollars ($1,000.00) to be paid to the caid C. W. Hughes and O. L. Dulaney, their heirs; and said principal and sureties jointly and severally bind themselves by these presents.

"Whereas, the said principal agrees to build and furnish all material and labor for a one-story brick building in the town of Wayne, Oklahoma, to be 50 ft. by 70 ft. according to plans and specifications held by said C. W. Hughes and O. L. Dulaney;

"Now, therefore, if the principal shall build such building and turn same over to said C. W. Hughes and O. L. Dulaney complete as per plans and specifications, free and discharged from all indebtedness, this obligation shall be null and void; otherwise to remain in full force.

"BOB WHITE, *Principal.*
"A. M. HOPPING, *Surety.*
"J. R. EVATT, *Surety.*"

The contract is as follows:

"This contract, made this day by and between O. L. Dulaney and C. W. Hughes, parties of the first part, and Bob White, party of the second part, and the conditions are as follows:

"Second party agrees to build one-story building, brick, in the town of Wayne, Oklahoma, on block 8, building to be 50 by 70 feet outside measure, according to plans and specifications hereto attached, and to furnish all material and labor necessary for the completion of the building, in the time of ———— working days from this date.

"For the above, parties agree to pay to second party the sum of $2,600, to be paid as follows:

"Estimate of material and labor to be made each Saturday evening by the two parties, and the amount of said estimates to be paid at these times, second party furnishing a good bond to the amount of $1,000.00.

"O. L. DULANEY,
"C. W. HUGHES,
*"First Parties.*
"BOB WHITE,
*"Second Party.*

"Witnesses:  LEO HUGHES."

The evidence tends to show that at the time this contract was entered into, and at the time the bond was given, the time within which the building was to be completed was left blank, and afterwards, and without the consent of the sureties, plaintiffs in error in this court, the figures "60" were inserted, thus binding the contractor to finish the building within 60 days from date. One of the breaches of the bond set out in the petition is:

"That the defendant White, though he contracted by said contract to construct said building in 60 days from the date of said contract, counting working days only, yet the plaintiff says that said building has never been fully completed, in that the walls are not complete, as per plans and specifications, to the plaintiff's damage in the sum of $25."

It also appears that about $1,900 of the contract price was paid White within two weeks after the signing of the contract, and in regard to this payment Hughes testified:

"Q. Mr. Hughes, you say the plan of paying money to Mr. White was to—. Now, coming back to the first you say Mr. White came over to where you were, up at the bank and busy, and would give you a list of what he said was the amounts expended for labor and what he said that he had bought material? A. Yes. Q. And then you would pay him the money? A. Yes, sir. Q. Would you go and see about all that labor, if it was performed, or the work performed, or the material delivered, down there? A. I wouldn't inquire into the labor, but I did go down there and looked over the work, but I couldn't tell. I am not expert on material. Q. Did you go down when you paid him the first check for $300? A. I don't know. Q. Did you go down when you would pay him this? A. I would go down and look over it, and see whether there was material there, but whether there was as much there as he said I couldn't say. Q. Did you go down when you paid him this first check for $300? A. I don't know. Q. You won't say that you did? A. No, sir; I won't. Q. When you paid him the $781 on the 7th day of May, right at the start, did you go down and see what material was there? A. I don't know that I went at that time; all that I will say is that I went sometimes and tried to see that the things were coming on all right. Q. On the 14th day of May, when you paid him $796. I will ask you if you and he went down together and made an estimate? A. I can't tell you as to any of those specifically. Q. In other words you paid out money without you two going down together, and going over and making an estimate of the material and labor? A. I never did estimate close with him; *I accepted his estimate.* Q. You frequently took his statement at the bank? A. Yes, sir."

The plaintiffs in error, among other thing, asked the court to instruct the jury to find for the defendants, which was refused, and exception duly saved. They also asked

the court to charge that if the building contract, for the performance of which the bond was given, was, after it was executed and delivered, materially changed by writing the number of days within which the building was to be completed, and if this was done without the consent of the sureties, the alteration of the contract would avoid the bond as to the sureties. This was also refused, and exceptions duly saved. There was a verdict and judgment for the plaintiffs, motion for new trial overruled, and exceptions saved, and the defendants below bring the case to this court by petition in error and case-made.

*J. W. Hocker,* for plaintiffs in error.

*Blanton & Andrews,* for defendants in error.

Opinion by DEVEREUX, C. (after stating the facts as above). In our opinion there was error in refusing to direct a verdict for the defendants in the court below. In *Miller v. Stewart,* 9 Wheat. 680, 6 L. Ed. 189, in which the opinion was by Mr. Justice Story, it is said:

"Nothing can be clearer, both upon principle and authority, than the doctrine that the liability of the surety is not to be extended, by implication, beyond the terms of his contract. To the extent, and in the manner, and under the circumstances pointed out in his obligation, he is bound, and no further. It is not sufficient that he may sustain no injury by a change in the contract, or that it may even be for his benefit. He has a right to stand upon the very terms of his contract; and if he does not assent to any variation of it, and a variation is made, it is fatal."

In *Justice v. Empire State Surety Co.,* 218 Fed. 802, 134 C. C. A. 490, it is held:

"Where a building contractor's bond provided that the owner should make specified payments during the progress of the work, but should retain not less than 10 per cent. of

all payments for work performed and materials furnished until the complete performance of the contract, but the owner did not retain the 10 per cent., and prior to the contractor's default he paid $2,000 more than the advance payments, there was a material alteration of the contract, for which the surety was discharged."

The case of *Eager v. Seeds et al.,* 21 Okla. 524, 96 Pac. 646, is almost directly in point. That was, as is the case at bar, a suit on a contractor's bond, and the second point of the syllabus is as follows:

"A surety is bound only by the strict terms of his undertaking. Having assumed such burden without sharing its benefits, he necessarily has the right to prescribe the exact terms upon which he will enter into such undertaking. It is not a question whether he is harmed or benefited by a disregard of the terms of his undertaking; and where by such terms the principals or other parties are to be paid by the obligors in certain proportion or at a certain time, when approved by the principals, and such payments are made in advance of such time or without such approval, the sureties will be discharged."

In the case at bar the contract provided that estimates of material and lumber were to be made each Saturday evening by the two parties, and the amount of the estimates to be paid at these times. The evidence shows that this was not done. The estimates were not made by the two parties, as is clearly shown by the plaintiffs' own testimony, and this is such a variation of the contract as brings it directly within the facts of the case of *Eager v. Seeds, supra,* and vitiates the undertaking as to the sureties.

In *Lamm v. Colcord,* 22 Okla. 493, 98 Pac. 355, 19 L. R. A. (N. S.) 901, a guaranty was given to extend credit to O. C. Scoresby, and it appeared that the credit was extended to Scoresby Tailoring Company, and, there being

no proof to show that O. C. Scoresby comprised the Scoresby Tailoring Company, the court held that the guarantors were released, saying:

"The guarantor has the right to prescribe the exact terms upon which he will enter into a guaranty obligation, and to insist upon a discharge in case these terms are not strictly observed."

In the case at bar the terms of payment were not strictly observed, and this case is also directly in point. We are also of the opinion that the insertion of the 60 days, within which the building was to be completed, in the contract after its signing and the signing of the bond, released the sureties. Under the contract as it existed when they signed it no time limit was fixed for the completion of the building, and this would be construed to give the contractor a reasonable time within which to complete it. Without plaintiffs' consent the time limit of 60 days was inserted in the contract. In *Richardson v. Fellner*, 9 Okla. 513, 60 Pac. 270, it is held that any alteration of a written instrument, after its execution, without the consent of the parties, which varies the legal effect of the contract, changes the operation of the contract, or the rights or liabilities of the parties, though no fraud results, is a material alteration, and vitiates the contract.

Clearly a guarantee to complete the building within a reasonable time, which must have been the construction of the contract in the absence of the 60 days put in without the consent of the sureties, is a very different obligation from a guaranty to complete the building within 60 days. There is no evidence in this case that the sureties were interested or received any benefit for becoming sureties on this bond. If such were the case, the burden was on the plaintiffs below to show these facts, so as to take the case

out of the general rule.   That the rule *strictissimi juris* does not apply when the surety is remunerated for going on the bond is settled in this state by section 1346, Rev. Laws 1910, construed in *Columbia Bank & Trust Co. v. United States Fidelity & G. Co.*, 33 Okla. 535, 126 Pac. 556. See, also, *American Surety Co. v. Scott*, 18 Okla. 264, 90 Pac. 7.   And even in the absence of a statute this rule is now followed by the great weight of modern decisions.  See *Justice v. Empire State Surety Co.* (D. C.) 209 Fed. 105; *City of Topeka v. Federal Union Surety Co.*, 213 Fed. 958, and cases cited on page 962, 130 C. C. A. 364; *Philadelphia v. Fidelity Deposit Co.*, 231 Pa. 208, 80 Atl. 62, Ann. Cas. 1912B, 1985; *United States Guaranty Co. v. Pressed Brick Co.*, 191 U. S. 422, 24 Sup. Ct. 142, 48 L. Ed. 242, in which the question is not decided, but the arguments pro and con are presented with great clearness.

It is argued for the defendant in error Dulaney that the alteration in the contract, by inserting the time limit of 60 days, was done by Hughes without his knowledge or consent, and therefore is not binding on him.   But Dulaney has expressly affirmed this change in the contract in his petition, for one of his allegations is that the building was not finished in 60 days, whereby he was injured.   Even if Hughes did not have authority from Dulaney to insert this provision in the contract, yet every ratification is equivalent to a prior command, and Dulaney has in the most explicit manner possible affirmed the act of Hughes. See *Fleckner v. United States Bank*, 8 Wheat. 363, 5 L. Ed. 631; Broom's Legal Maxims, p. 672.

We therefore recommend that the judgment be reversed, and this case remanded for a new trial.

By the Court:   It is so ordered.