## FRANCEN et al. v. OKLAHOMA STAR OIL CO. et al.

No. 10811—Opinion Filed Oct. 12, 1920.

Rehearing Denied Jan. 8, 1921.

(Syllabus by the Court.)

**1.  Homestead — Oil and Gas Lease — Joint Consent of Husband and Wife.**

An oil and gas lease covering a homestead which grants the right to enter upon the same and operate for oil and gas, together with the right to lay pipe lines, telephone and telegraph lines, and erect power houses, stations, fixtures necessary for the production of oil and gas, is such a grant of the use and occupancy of the homestead as requires the joint consent of both the husband and wife.

### 2. Alteration of Instruments—Effect.

Any alteration in a written instrument made after its execution, and without the consent of the party to be bound, which varies the legal effect of the instrument, or changes the rights or liabilities of the parties, although there is no fraud, vitiates the instrument.

### 3. Same—Test of Materiality.

In determining whether an alteration is a material alteration, the test is, not whether an alteration increases or reduces a party's liability, but whether the instrument expresses the same contract—whether it will have the same legal effect and operation after the alteration as before.

### 4. Homestead—Oil and Gas Lease—Alteration—Consent of Husband and Wife.

Where a wife joins with her husband in executing an oil and gas lease on the homestead, the persons for whose benefit the oil and gas lease was taken cannot make a material alteration of said oil and gas lease without the knowledge and consent of both husband and wife.

### 5. Alteration of Instruments—Materiality—Oil and Gas Lease.

The striking out, or erasing, of the surender clause from the lease in the instant case amounted to a material alteration.

### 6. Same—Alteration by "Stranger"—"Spoliation."

Persons having a pecuniary interest in an instrument cannot be held to be strangers to such instrument, and any material alteration, either directly or indirectly, by such persons will be held to avoid the instrument, and not to be a mere spoliation thereof.

Error from District Court, Caddo County; Will Linn, Judge.

Action by C. E. Francen and wife against the Oklahoma Star Oil Company and another to cancel an oil and gas lease. Judgment for defendants, and plaintiffs bring error. Reversed.

Morris & Jameson, for plaintiffs in error.
Kleinschmidt & Grant and Asp, Snyder, Owen & Lybrand, for defendants in error.

McNEILL, J. This action was commenced in the district court of Caddo county by C. E. Francen and Ida Francen, husband and wife, against the Oklahoma Star Oil Company and F. D. Owen, to cancel a certain oil and gas lease made to J. M. Hines, and thereafter assigned to the defendants, on eighty acres of their homestead.

Allegations of the petition were, first, that C. P. Smith was the duly authorized agent of J. M. Hines and procured the lease by certain fraudulent representations.

The second ground for cancellation of said lease was that said lease had been materially altered and changed by the defendants by striking out of the lease that portion of the lease commonly known as the "surrender clause," and said alteration was made without the knowledge and consent of plaintiffs.

Upon trial of the cause to the court, the court found the issues in favor of the defendants and against the plaintiffs, and from said judgment the plaintiffs have appealed and asked for reversal upon two grounds: First, the findings of fact of the court amounted to a finding that the lease was obtained by fraud, and the court should have rendered judgment for the plaintiffs, Second, the court erred in the fourth finding in holding that alteration of the lease by striking out the surrender clause from the lease was immaterial. The finding of the court upon this question was as follows:

"The court further finds that the alleged alterations of the lease involved herein, if made as alleged by the plaintiffs, was an immaterial alteration, and the court therefore makes no finding of fact thereon."

The court made no finding as to whether the land in question was the homestead of the plaintiffs, but an examination of the record discloses that the evidence of the plaintiffs, who contended the land was a part of that homestead, was conclusive, and was not disputed or contradicted in any way.

The court made no finding as to whether the lease had been altered or the surrender clause stricken out, but held that the striking out of the surrender clause would amount to an immaterial alteration. We will consider the correctness of the court's ruling upon the theory that the premises were the homestead of the plaintiffs, and if the striking out of the surrender clause from the lease was without consent of both the husband and wife, whether the same was a material alteration. It will first be necessary to consider whether it is necessary for the husband and wife both to join in the execution of an oil and gas lease. This court has determined that question in the case of Carter Oil Company v. Popp, 70 Oklahoma, 174 Pac. 747, as follows:

"An oil and gas lease covering a homestead which grants the right to enter upon the same and operate for oil and gas * * * is such a grant of the use and occupancy of the homestead as requires the joint consent of both husband and wife."

The validity of a conveyance of the homestead without a joint conveyance of the husband and wife is discussed in the case of Shanks v. Norton, decided May 11, 1920, 79 Okla. 93; McWhorter v. Brady, 41 Okla. 383, 140 Pac. 783; Whelan v. Adams, 44 Okla. 696, 145 Pac. 1158.

By applying the same principle of law

enunciated in the above entitled cases, we must conclude any conveyance of the homestead by the husband without the wife joining in said conveyance is invalid. It must therefore follow that if the husband and wife executed a joint conveyance relating to the homestead, neither the husband nor wife could consent to an alteration or changing of said contract, or conveyance, without the consent of the other. The question then presented for consideration is: What effect does the alteration of a written instrument have upon the instrument?

The general rule of the various states is that an alteration of an instrument must be a material one before it vitiates the instrument, although the contrary rule is announced in Missouri and New Jersey. In those two states it is held that any alteration made by a party to a written instrument is fatal, and vitiates the instrument. This state, in a long line of decisions, is committed to the doctrine that, in order for an alteration to vitiate a written instrument, the alteration must be a material one. The difficulty often arises in determining whether the alteration is a material one or not, and it is sometimes hard to harmonize the different authorities in order to determine what is a material alteration.

The rule announced in the case of White v. Harris (S. C.) 48 S. E. 41, 104 Am. St. Rep. 791, is as follows:

"The test is not, whether an alteration increases or reduces a party's liability, but whether the instrument expresses the same contract—wheth r it will have the same legal effect and operation after the alteration as before."

This same rule, although in different language, is announced by this court in the case of Evatt v. Dulaney, 51 Okla. 81, 151 Pac. 607, where it is stated:

"Any alteration in a written instrument made after its execution and without the consent of the party to be bound, which varies the legal effect of the instrument, or changes the rights or liabilities of the parties, although there is no fraud, vitiates the instrument."

Other cases announcing the same rule are: Commonwealth National Bank v. Baughman, 27 Okla. 175, 111 Pac. 332; Richardson v. Fellner, 9 Okla. 513, 60 Pac. 270; International Bank v. Mullen, 30 Okla. 547, 120 Pac. 257; Citizens' State Bank of Ramona v. Grant, 52 Okla. 256, 152 Pac. 1082; Voris v. Birdsall, 62 Okla. 286, 153 Pac. 673; First National Bank of Cushing v. Ketchum, 68 Oklahoma, 172 Pac. 81. This court, in the case of Commonwealth National Bank v. Baughman, 27 Okla. 175, 111 Pac. 332, held:

"An alteration of a note so as to make it bear 8 per cent. interest, which before the alteration bore 10 per cent. interest, is a material alteration."

By applying the same principle to the case at bar, did the alteration of the oil and gas lease in question change the rights or liabilities of the parties?

An examination of the oil and gas lease discloses that it is not the usual form of lease, but contains the following provisions:

"The party of the second part agrees to commence drilling a well on said premises within six months from the date hereof, and to prosecute such work with due diligence to completion, and in case the work of drilling is abandoned for a period of one year, to pay to the first parties thereafter one ($1.00) dollar per acre, per annum, during the term of this lease, and it is agreed that the prosecution of the work of drilling or the completion of such well shall be a full liquidation of all rent under this provision during the remainder of the term of this lease."

There is no forfeiture clause in the lease, and a failure to pay the rental when due or failure to drill does not forfeit or terminate the lease. The lessee, prior to the time the surrender clause was stricken out, could, at any time, upon the payment of all back rentals, pay $1 and surrender the lease, and be released from any further obligations thereunder. Now the lessee has no such right to surrender the lease. His failure to pay rent or failure to drill a well will not, of itself, terminate the lease, nor release him from the obligations of the lease. The lessee has no option, as the lease now is, to drill or pay rent, but must drill or pay the rental during the five years. Therefore, the rights of the parties are not the same; the obligations are not the same, and the contract becomes a different contract. As to whether the rights or benefits are more beneficial to the lessor by reason of the alteration is not to be considered.

The striking out of the surrender clause in this kind and character of a lease is a material alteration of the lease, for the rights and obligations of the parties are changed by reason of such alteration. The court committed error in holding the alteration immaterial.

It is contended by defendants in error that if the lease was altered, the alteration was made by Mr. Lewin, and he, being a stranger to the instrument, that the same is not an alteration, but amounted to a spoliation. The evidence does disclose that Mr. Lewin made the alteration, and the same was made in the presence of Mr. Smith and Mr. Francen, and at Mr. Smith's direction. Mr. Smith was the party who procured the lease and testified that he wrote the lease and pro-

cured, not only the lease in question, but about seventeen hundred (1,700) acres in this block, and that he took some of the leases in his own name, and some in the name of Hines, and some in the name of the Star Oil Company, for the purpose of getting a well drilled in section 19, and testified that the leases were all placed in a pot to be turned over to whomsoever they could get to drill the well, and it would appear he was claiming an interest in the leases; but the court made no finding on this question, nor did it appear to be an issue in the trial court.

If Smith had an interest in the lease, then the rule applicable is announced in 1 R. C. L. 986, as follows:

"Persons having a pecuniary interest in an instrument cannot be held to be strangers to such instrument, and an alteration by such persons will be held to avoid the instrument, and not to be a mere spoliation thereof."

The rule is also announced in 1 R. C. L. 990, and is stated as follows:

"It is a well-established rule that any material alteration in a written instrument, after the execution thereof, made either directly or indirectly by one claiming a benefit under it, without the consent of the party sought to be charged thereon, will render the instrument void as to the latter even in the hands of an innocent holder so far as relates to the executory provisions thereof. Such alteration deprives the holder responsible for it of any executory rights or right of action thereon and, it is generally held, destroys the evidential force and effect of the instrument."

We must therefore conclude the premises were the homestead of plaintiffs, and if the surrender clause in the lease was erased, it was a material alteration. As to whether it was a spoliation, that will depend on the finding of whether Smith had an interest in the lease.

For the reasons stated, the judgment of the court is reversed, and the cause remanded, with directions to grant plaintiffs a new trial.

RAINEY, C. J., and KANE, PITCHFORD, JOHNSON, and HIGGINS, JJ., concur.