2013 OK CIV APP 42

The CITY OF OKLAHOMA CITY, Plaintiff,

v.

FIRST AMERICAN TITLE & TRUST COMPANY, Defendant/Cross–Defendant/Appellee,

and

Burns Paving Company, Defendant/Cross–Plaintiff/Appellant,

and

First American Title & Trust Company, Third Party Plaintiff,

v.

Methvin Enterprises, Inc., an Oklahoma corporation, and Jerl Methvin, individually, Third Party Defendants,

and

DPC Investments, LLC, Intervenor.

No. 110,268.

Court of Civil Appeals of Oklahoma, Division No. 1.

Oct. 11, 2012.

Rehearing Denied Jan. 4, 2013.

Certiorari Denied Jan. 23, 2013.

---

2. Title 22 O.S.2011, 471.7(E) provides in part:

Mark W. Kuehling, Kuehling Sexson, P.C., Oklahoma City, Oklahoma, for Defendant/Cross–Defendant/Appellee.

J. Kelly Work, Oklahoma City, Oklahoma, for Defendant/Cross–Plaintiff/Appellant.

KENNETH L. BUETTNER, Presiding Judge.

¶ 1    Defendant/Cross–Plaintiff/Appellant Burns Paving Company (Subcontractor) appeals from summary judgment granted in favor of Defendant/Cross–Defendant/Appellee First American Title & Trust Company (Surety). After Plaintiff, the City of Oklahoma City (Obligee), filed suit to recover on a subdivision bond given by Surety for Third–Party Defendant Methvin Enterprises, Inc. (Principal), Subcontractor and Surety litigated whether Subcontractor was entitled to payment on the bond from Surety. The summary judgment record shows Surety claims alterations to a subcontract exonerated its bond covering an agreement between Principal and Obligee. The rules on exoneration of a bond apply where a contract between a principal and obligee has been altered. Surety was not exonerated from liability by alterations to a subcontract between Principal and Subcontractor. Disputes of material fact as to liability of the various parties are unresolved. We reverse and remand for further proceedings.

¶ 2 This case involves a dispute over a surety's liability on a subdivision bond. Obligee sued Surety and Subcontractor, alleging Obligee approved Surety's subdivision bond for construction of paving and storm sewer improvements in Principal's "Rio De Bella

Section Two" residential subdivision in Oklahoma City. The bond was given to secure Obligee's approval of the final plat. There is no dispute that Obligee acted within its statutory authority in conditioning approval of Principal's subdivision plat on a bond to ensure completion of paving and storm sewers. 11 O.S.2011 § 47–114(B).[1] Principal contracted with Subcontractor to complete the paving and storm sewer improvements. Obligee alleged Subcontractor did not complete the job and Principal failed to complete the improvements by the bond's two year deadline.

¶ 3 Obligee alleged Surety ignored its demand that it pay the amount necessary to complete the improvements, which Obligee asserted was $254,607.75. Obligee maintained it would not release the bond until all necessary work was completed and all bills paid. Obligee asserted a cause of action for breach of contract against Surety.

¶ 4 Subcontractor answered and admitted Obligee's claims, but contended it did not complete the work because it was not being paid. Subcontractor made a cross-claim against Surety for payment under the bond.

¶ 5 Surety answered and denied Obligee's claims. Surety included a Third–Party Petition against Principal, in which it alleged Principal had agreed to indemnify it for any funds it paid as surety. Surety denied Subcontractor's cross-claim, arguing Subcontractor had been paid in full and that the bond was exonerated. Surety cross-claimed against Subcontractor, alleging Subcontractor failed to complete the job in a workmanlike manner. Surety demanded Subcontractor pay to have the defective paving repaired or replaced.

¶ 6 Subcontractor denied Surety's cross-claim. Subcontractor filed its Motion for Summary Judgment August 11, 2011. Subcontractor included 23 undisputed facts which it argued showed it was entitled to judgment as a matter of law.[2] Subcontractor argued that Surety's bond was not exonerated because of an indemnification agreement

1. Section 114 provides, in pertinent part (emphasis added):

A. Before the commission may exercise jurisdiction over subdivision of land, it shall adopt regulations governing the subdivision of land within its jurisdiction....
B. The regulations on subdivision of land may include provisions as to the extent to which streets and other ways shall be graded and improved and to which water and sewer and other utility mains, piping or other facilities shall be installed as a condition precedent to the approval of the plat. The regulations or practice of the commission may provide for a tentative approval of the plat previous to such installation; but any such tentative approval shall be revocable for failure to comply with commitments on which the tentative approval was based, and shall not be entered on the plat. *In lieu of the completion of any improvements and utilities prior to the final approval of the plat, the commission may accept an adequate bond satisfactory to the commission, with surety, to secure to the municipality the actual construction and installation of the improvements or utilities at a time and according to specifications fixed by or in accordance with the regulations of the commission, and further conditioned that the Principal will pay for all material and labor entering into the construction of the improvements.* The municipality is hereby granted the power to enforce such bond by all appropriate legal and equitable remedies.
* * *

2. Summarized, Subcontractor asserted it was undisputed that Subcontractor furnished labor, equipment, and materials for paving and sewer improvements pursuant to a June 4, 2007 contract with Principal; the work was approved by Obligee, but $187,087 in principal and $69,911.20 in interest remained due and owing for Subcontractor's work. Surety's subdivision bond, approved by Obligee, required Principal to pay all bills incurred in completion of the improvements. The $517,297.16 bond gave Principal two years from May 8, 2007 to complete the improvements and pay subcontractors. When Principal was unable to make monthly payments, it agreed to pay interest to Subcontractor on the unpaid balance. Subcontractor filed a mechanic's and materialmen's lien statement July 31, 2008 and Surety was aware of the lien claim because Surety issued checks for partial payment to Subcontractor. When the lien statement was about to expire, Subcontractor received a note and mortgage, to secure the debt owed, from Principal July 17, 2009. The note was payable on demand but the note and mortgage were subsequently rescinded without being paid. Surety and Principal agreed to the bond March 14, 2007 and Surety received payment of $5,172.97 for issuing the bond. Subcontractor made demand on Obligee to enforce the bond February 8, 2010 and Obligee made demand on Surety October 7, 2010. Surety refused to pay and contended obligee issued building permits and certificates of occupancy, which impaired Surety's position.

between Surety and Principal,[3] because Subcontractor did not extend the time for payment under its contract with Principal, and because Surety was compensated for the bond. Subcontractor additionally contended that its acceptance of notes and mortgages from Principal was not an accord and satisfaction, that Subcontractor was entitled to recover interest from Surety, that Obligee's issuing building permits and certificates of occupancy did not impair Surety's position, and that Surety acted in bad faith towards Subcontractor.

¶ 7 Surety filed a Cross–Motion for Summary Judgment September 9, 2011.[4] Surety argued that although there were issues of fact regarding the amount and quality of Subcontractor's work, summary judgment in favor of Surety was nevertheless required based on its claim the bond was exonerated. Surety contended the bond was exonerated because Subcontractor and Principal altered their subcontract by extending the date payments were due and Subcontractor accepting partial payments, Subcontractor allowing its

mechanic's and materialmen's lien to lapse, Subcontractor and Principal agreeing to add interest to amounts not paid, Subcontractor accepting a note and mortgage from Principal, and Subcontractor releasing the mortgage, all without Surety's consent.

¶ 8 Subcontractor filed its Reply September 23, 2011. Subcontractor repeated its arguments that its actions did not exonerate the bond and that its performance was approved (but not accepted) by Obligee.

¶ 9 Following a hearing, the trial court issued its Journal Entry of Summary Judgment December 12, 2011. The court denied Subcontractor's Motion for Summary Judgment and granted Surety's Cross–Motion for Summary Judgment. The court reserved Surety's cross-claims against Subcontractor and Subcontractor's defenses thereto.[5] The court directed that its judgment determined all of Subcontractor's claims against Surety and certified the decision for immediate review pursuant to 12 O.S.2001 § 994(A).

**3.** Subcontractor relied on 15 O.S.2011 § 338, which provides:

> A guarantor is exonerated, *except so far as he may be indemnified* by the principal, if by any act of the creditor, without the consent of the guarantor, the original obligation of the principal is altered in any respect, or the remedies or rights of the creditor against the principal, in respect thereto, in any way impaired or suspended.

Nothing in the record indicates Surety was indemnified. Subcontractor contends an indemnity agreement is sufficient to satisfy this statute. We find the bond was not exonerated, but for different reasons, explained below.

**4.** Surety disputed some of Subcontractor's fact statements. Surety asserted Subcontractor's work was not approved by Obligee and that Obligee required repair and replacement of a substantial part of the work performed by Subcontractor. Surety asserted also that Subcontractor was paid for its work because it accepted a note and mortgage from Principal for the amount due. Surety asserted also that Subcontractor is responsible for the cost of correcting the defects in its work, which Surety contended exceeded the amount Subcontractor claimed to be owed. Surety later asserted Subcontractor was not entitled to any payment because it altered the original obligation by adding $70,000 in interest which materially altered Surety's obligation as surety. Finally, Surety denied it was liable to Subcontractor under the bond.

Surety included a statement of additional material facts, including that Surety executed the bond for $527,297.16, which represented an engineer's estimate plus 10%; Surety did not know Principal and Subcontractor entered an agreement to do the work for $226,858.80 more than the engineer's estimate; Subcontractor agreed to complete all the improvements within 75 days and Surety reasonably expected that all improvements would be completed by fall 2007, and Surety did not receive notice of any problem until 2010; Subcontractor made no claim for payment under the bond until February 8, 2010, after the housing market had deteriorated and Principal was in bankruptcy; in spring 2008, Subcontractor and Principal modified their contract by Subcontractor agreeing to accept partial payments upon the sale of lots; Surety did not consent to alteration of the subcontract between Subcontractor and Principal; Subcontractor accepted a note and mortgage from Principal July 17, 2009 as payment of the amount due but Subcontractor continued to accept partial payment from the sale of lots; Surety did not consent to a release of the mortgage or rescission of the note, and Subcontractor did not return the benefits it had received under the note; Subcontractor's work was defective and Obligee demanded that Surety remove and replace improvements made by Subcontractor; and Subcontractor is responsible for repairing and replacing the work required by Obligee.

**5.** Surety dismissed its cross-claim without prejudice January 18, 2012.

¶ 10 Summary judgment proceedings are governed by Rule 13, Rules for District Courts, 12 O.S.2011, Ch. 2, App.1. Summary judgment is appropriate where the record establishes no substantial controversy of material fact and the prevailing party is entitled to judgment as a matter of law. *Brown v. Alliance Real Estate Group,* 1999 OK 7, 976 P.2d 1043, 1045. Summary judgment is not proper where reasonable minds could draw different inferences or conclusions from the undisputed facts. *Id.* Further, we must review the evidence in the light most favorable to the party opposing summary judgment. *Vance v. Fed. Natl. Mortg. Assn.,* 1999 OK 73, 988 P.2d 1275.

¶ 11 The parties agree Principal was unable to complete the project after it became insolvent. Subcontractor alleges it stopped work after Principal stopped paying. The only issue presented in this appeal is whether Surety's liability under the bond was exonerated by alterations to the subcontract between Subcontractor and Principal.[6]

A bond to be valid, like any other contract, requires at least two contracting parties, one called the "obligor" and the other the "obligee." More specifically, there must be an obligor, who is bound to do what it is agreed shall be done, and an obligee, who must be a natural or artificial person, whom the law recognizes as being the subject of rights, and who can, if there is a default, enforce the obligation against the obligor.

11 C.J.S. Bonds § 7. In this case, Principal is the obligor and the City is the obligee. "A suretyship is the result of a three-party agreement, whereby one party (the surety) becomes liable for the principal's or obligor's debt or duty to the third party obligee, Both the obligor-principal ... and the surety are liable to the obligee ..., and no suretyship exists in the absence of any of the three parties." *Balboa Ins. Co. v. U.S.* 775 F.2d 1158, 1160 (Fed.Cir.1985).

¶ 12 Surety contends its liability on the bond was exonerated by the conduct of Principal and Subcontractor in changing the subcontract. A surety is exonerated either by the principal performing the obligation, or by conduct of the principal which prejudices the surety.[7] As shown in the cases on which Surety relies, exoneration may be found where a principal and obligee change their contract.[8]

---

6. As noted above, Surety's claim that Subcontractor's work was defective was reserved by the trial court and later dismissed by Surety.

7. "A surety is one who, at the request of another, and for the purpose of securing to him a benefit, becomes responsible for the performance by the latter of some act in favor of a third person, or hypothecates property as security therefor." 15 O.S.2011 § 371. Although the parties have cited authority applicable to sureties and guarantors, First American acted as a surety in this case. 15 O.S.2011 § 376 provides:

Performance of the principal obligation, or an offer of such performance duly made as provided in this chapter exonerates a surety.

15 O.S.2011 § 377 provides:
A surety is exonerated:
1. In like manner with a guarantor.
2. To the extent to which he is prejudiced by any act of the creditor which would naturally prove injurious to the remedies of the surety or inconsistent with his rights, or which lessens his security; or,
3. To the extent to which he is prejudiced by an omission of the creditor to do anything, when required by the surety, which it is his duty to do.

8. For example, in *First Enterprise Bank v. Be-Graphic, Inc.,* 2006 OK CIV APP 141, 149 P.3d 1064, the Oklahoma Court of Civil Appeals noted the issue was whether the defendant had waived the statutory exoneration provisions (15 O.S. 2001 § 338 and § 377) "which exonerates a surety from liability if the creditor *alters the original obligation* without the surety's consent." (Emphasis added.) Surety also relies on *Evatt v. Dulaney,* 1915 OK 580, 151 P. 607, 51 Okla. 81, but in that case, the court explained that the surety was exonerated as a result of changes to the terms of payment included in the surety's undertaking. In *Whale v. Rice,* 1935 OK 838, 49 P.2d 737, 741, 173 Okla. 530, the court noted "the liability of the surety must be tested by determining whether the assignment constituted *an alteration of the terms of the surety contract,....*" (Emphasis added.)

15 O.S.2011 § 338 provides (emphasis added):
A guarantor is exonerated, except so far as he may be indemnified by the principal, *if by any act of the creditor, without the consent of the guarantor, the original obligation of the principal is altered* in any respect, or the remedies or rights of the creditor against the principal, in respect thereto, in any way impaired or suspended.

A surety is ordinarily discharged from liability after the *principal contract or the contract of suretyship is materially altered*, without the surety's knowledge or consent.

Since a surety has the right to rely on the terms of the suretyship contract, the surety is discharged, if, without the surety's knowledge or consent, any material alteration is made in the suretyship contract or the principal contract or obligation. This is because the parties to the underlying contract may not unilaterally increase the surety's liability.

72 C.J.S., *Principal and Surety*, § 114 (footnotes omitted, emphasis added).

¶ 13 However, in this case, Surety complains of changes to the subcontract between Principal and Subcontractor and bases its claim for exoneration on those changes. Exoneration will be found only where there are material changes to the principal contract or the contract of suretyship. In this case, Surety could claim exoneration only if it showed changes in Principal's contract with Obligee or changes in the bond agreement. Surety has not asserted either of these.

¶ 14 While Surety has cited many cases stating the rule that alteration of the underlying agreement will exonerate a surety, it has not cited authority allowing exoneration based on changes to a contract other than the underlying agreement on which the bond was made. The reason for the rule, to protect a surety from exposure to a different risk than it agreed to, is not implicated here.

¶ 15 The summary judgment record shows the bond was not exonerated by the acts alleged. The record nevertheless shows disputes of material fact as to the liability of the various parties. We therefore REVERSE AND REMAND for further proceedings.

JOPLIN, V.C.J., and GOREE, J., concur.