Earl W. GOSS, Jr. and Cheryl Goss, husband and wife, Plaintiffs/Appellees,

v.

TRINITY SAVINGS & LOAN ASSOCIA-TION, TSL Service Corporation, STM Mortgage Company, Defendants/Appel-lants.

FEDERAL NATIONAL MORTGAGE ASSOCIATION, Plaintiff/Appellant,

v.

Earl W. GOSS, Jr. and Cheryl Goss, husband and wife, Defendants/Appellees.

No. 67298.

Supreme Court of Oklahoma.

Feb. 26, 1991.

As Corrected Feb. 27, 1991.

As Amended on Grant of Rehearing For Limited Purpose May 30, 1991.

Jack S. Dawson, Clell I. Cunningham, III, Janice Dansby, Miller, Dollarhide, Dawson, & Shaw, Oklahoma City, for plaintiffs/appellees.

Carl Huges, Michael McGuire, John Coyle, Huges & Nelson, Oklahoma City, for defendant/appellant Trinity.

Linda G. Scoggins, Jeffrey H. Contreras, Spradling, Alpern, Friot and Gum, Oklahoma City, for plaintiff/appellant FNMA.

LAVENDER, Justice.

The principal issue presented is whether a note with an adjustable interest rate tied to the average yield on U.S. Treasury Securities (T-bills) is a negotiable instrument as defined by the Uniform Commercial Code (UCC) 12A O.S.1981, § 3–104(1)(b). Initially, however, we must consider; 1) whether the court allowed Appellees a double recovery; 2) whether the court correctly ruled the unauthorized alteration made on the face of the note was material thereby justifying the cancellation of the note under 15 O.S. § 239 in Appellees' favor; and 3) whether the court's award of attorney fees was proper.

The Court of Appeals' opinion determined there was no double recovery and the alteration was material. Further, it concluded the note was not a negotiable instrument in that the interest rate on this loan could not be determined exclusively from the face of the note since an external source must first be consulted. Finally, the court reversed in part the award of attorney's fees.

We conclude Appellees did not receive a double recovery and that the alteration was material. However, we find a note is negotiable when the interest rate is readily obtainable from a published source. We therefore remand this case for a determination consistent with the reasoning herein of Federal National Mortgage Association's (FNMA) holder in due course status. The court can then either cancel the note or address FNMA's foreclosure action. We need not consider the award of attorney's fees since our opinion effectively moots that issue.

## I. FACTS

In May 1982, Plaintiffs Earl and Cheryl Goss obtained a loan from Trinity Savings and Loan Association in order to purchase a new home. During this time interest rates were unusually high. To alleviate the problem, lenders began offering adjustable rate mortgages with negative amortization features and graduated payments. Simplified, this meant that while monthly payments were payable at one interest rate, in actuality, a loan was accruing at another rate. This difference would accrue and be made up in graduated payments over the life of the loan. The Gosses obtained such a loan, although there are facts in dispute concerning the percentage of interest agreed to be paid.

Subsequently, Trinity attempted to resell plaintiffs' note to FNMA. The note incorrectly showed the accrual rate of interest at 12.5% instead of at 16.5% as purportedly agreed to by the parties. Initially, FNMA refused to purchase the Gosses' note. Trinity sent one of its employees to Oklahoma City to obtain the Gosses' signatures

in order to correct the "error." Though the changes were made and apparently initialed, the Gosses testified they neither initialed such changes, nor authorized anyone else to make such changes.

Upon discovering the documents had been altered, the Gosses filed suit alleging fraud and breach of contract and requesting the court to award damages and to discharge the note pursuant to 15 O.S. § 239. FNMA countersued to foreclose on the mortgage since the Gosses had stopped making payments. The court consolidated these actions for trial. FNMA also filed a cross-claim against Trinity seeking indemnity under the terms of a service contract the parties had executed earlier.

At trial the question of fraud was submitted to the jury and resulted in a favorable verdict for Earl and Cheryl Goss. They were awarded $2,978.63 for actual damages and $5,000.00 in punitive damages.

The trial court as a matter of law ruled the unauthorized alteration was a material alteration and pursuant to 15 O.S.1981, § 239, ordered the note and mortgage cancelled. Trinity was ordered to indemify FNMA according to its contractual agreement; that decision was not appealed. Finally, the court awarded the Gosses $35,-000 in attorney fees as the prevailing party under 12 O.S.1981 § 936.

The Court of Appeals affirmed the trial court's ruling except that portion of the order granting attorney fees. All three parties have petitioned this court for certiorari. Earl and Cheryl Goss seek the reinstatement of the trial court's award of attorney fees. Trinity alleges the court erred by allowing for both an equitable and legal remedy where the legal remedy was adequate and in ruling the alteration was material rather than a mere spoilation. FNMA likewise asserts the alteration was not material. Moreover, FNMA requests this court to decide the first impression issue as to whether or not the Gosses' note is a negotiable instrument. This is significant because if the note is a negotiable instrument and if FNMA is a holder in due course, then FNMA would be invulnerable to such defenses which the Gosses might urge against Trinity as to the alleged unauthorized alteration. We previously granted certiorari.

## II.

The first issue we must address is whether or not the court's order resulted in a double recovery for the Gosses. The jury awarded the Gosses actual and punitive damages based on the fraud action and the trial court as a matter of law cancelled the note and mortgage. Trinity maintains the Gosses therefore received both legal and equitable remedies, that these remedies do not run concurrently and that an equitable remedy should only be allowed when the remedy at law is inadequate.

Further, Trinity asserts the Gosses actions are inconsistent in that one claiming fraud cannot both affirm the contract and seek damages and concurrently endeavor to have the contract cancelled. Trinity finds support for this in the holding of *State ex rel. Burk v. Oklahoma City*,[1] wherein we held one claiming fraud cannot rescind the contract and at the same time affirm it and seek damages.

While we do not dispute Trinity's reasoning in the proper case, we find it inapplicable to the present set of facts. In *Uptegraft v. Dome Petroleum Corp., et al.*,[2] we held:

> The doctrine [of election of remedies] applies where there exists more than one remedy at the time of election which are inconsistent and repugnant. The rule is based upon the theory that pursuit of one inconsistent remedy involves negation of others. *The Court also stated the rule has no application where the remedies are merely concurrent or cumulative.*

The Gosses brought suit to recover damages based on the difference between the amount of interest owed and the

1. 556 P.2d 591 (Okla.1976).

2. 764 P.2d 1350, 1355 (Okla.1988) (emphasis added).

amount paid as a result of the unauthorized altered interest rate. Additionally, the Gosses sought to have the note and mortgage cancelled pursuant to 15 O.S. 1981, § 239. That section states:

> The intentional destruction, cancellation, or material alteration of a written contract, by a party entitled to any benefit under it, or with his consent, extinguishes all the executory obligations of the contract in his favor, against parties who do not consent to the act.

As stated in *Uptegraft*, the doctrine of election of remedies is not applicable where the remedies are merely concurrent or *cumulative*. Black's Law Dictionary (5th Ed. 1979) states that a "cumulative remedy" is one created by statute in addition to one which still remains in force. Therefore, while the Gosses were entitled to seek recovery under the statute to cancel their executory obligations under the contract, this in no way precluded them from also seeking recovery of the additional interest paid as a result of the wrongful alteration.

Further, while it is true the Gosses benefitted from cancellation of the contract, we see the primary intent of the statute as punitive in nature rather than compensatory. It was meant to deter this type of behavior. We find the remedies awarded in the present case are cumulative rather than inconsistent and therefore affirm that part of the trial court's order.

### III.

Having determined the Gosses were entitled to seek both remedies, the next question we must address is whether the trial court erred in holding the alteration was material thereby justifying cancellation of the note and mortgage. Trinity and FNMA both argue the alteration of the interest rate was not material in that the Gosses were aware of the actual interest rate, and a reading of all the documents evidenced this fact. Therefore, they contend the alteration merely corrected a clerical error and conformed the documents to the parties original intent.

■ The test, as stated in *Francen v. Oklahoma Star Oil Co.*,[3] is that:

> Any alteration in a written instrument, made after its execution and without the consent of the parties to be bound, *which varies the legal effect of the instrument or changes the rights or liabilities of the parties*, although there is no fraud, vitiates the instrument.

Therefore, the test is whether the alteration changed the legal effect of the document or the rights and liabilities of the Gosses. In answering that question we turn to precedential case law. In *Commonwealth Nat. Bank v. Baughman*,[4] we found that: "The alteration of a note so as to make it bear 8 per cent interest which before the alteration bore 10 per cent. (sic) interest, is material."

■ Applying these same principles of law, it is readily apparent that twelve point five percent (12.5%), which is what the note stated, was not the same as sixteen point five percent (16.5%) which is what the note was altered to read. This alteration was performed without the Gosses' consent. Appellants argue that the documents, when read together, evidenced that 16.5% was the *accural* rate of interest and 12.5% was the *payable* rate of interest for the beginning years of the loan is therefore without merit. We are not confronted with the case where one party is attempting to conform the documents to the parties' original intent; we are dealing with a document that has already been changed and trying to determine whether "that change" was material. Case law says it is material. Further, even if it be true, as FNMA asserts, that the alteration did not change the amount of interest the Gosses were actually paying, this does not mean Trinity or FNMA were legally entitled to that rate of interest given the error in the note. After all, FNMA initially refused to purchase the note without the correction. Accordingly,

**3.** 80 Okl. 103, 105, 194 P. 193, 194 (1920) quoting *Evatt v. Dulaney*, 51 Okl. 81, 151 P. 607 (1915).

**4.** 27 Okl. 175, 175, 111 P. 332, 332 (1910).

we affirm the trial court's decision that the alteration was material.

■ Having determined the alteration was material, the trial court held that pursuant to 15 O.S.1981, § 239, the Gosses were entitled to have the contract cancelled. We would affirm the court's order if Trinity still held the note. However, FNMA purchased the note. If, as FNMA alleges, it was a holder in due course and it accepted a negotiable note, then the material alteration made by Trinity would not affect the validity of the note as to FNMA since a holder in due course *takes free of all defenses of any party to the instrument with whom the holder has not dealt.* We therefore turn to this first impression issue to decide whether the note was negotiable.

### IV.

The question squarely presented is whether a variable interest rate note is a negotiable instrument pursuant to the Uniform Commercial Code 12A § 1–101 et seq. Section 12A O.S.1981, § 3–104 states:

(1) Any writing to be a negotiable instrument within this Article must

(a) be signed by the maker or drawer; and

(b) contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power given by the maker or drawer except as authorized by this Article; and

(c) be payable on demand or at a definite time; and

(d) be payable to order or to bearer.

A person taking a negotiable instrument is a holder in due course provided he satisfies the requirements of 12A O.S.1981, § 3–302. That section provides:

(1) A holder in due course is a holder who takes the instrument

(a) for value; and

(b) in good faith; and

(c) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person.

The significance of this status is that a holder in due course is then afforded the rights as set forth in 12A § 3–305. This section reads as follows:

To the extent that a holder is a holder in due course he takes the instrument free from

(1) All claims to it on the part of any person; and

(2) All defenses of any party to the instrument with whom the holder has not dealt except

(a) infancy, to the extent that it is a defense to a simple contract; and

(b) such other incapacity, or duress, or illegality of the transaction, as renders the obligation of the party a nullity; and

(c) such misrepresentation as has induced the party to sign the instrument with neither knowledge of its character or its essential terms; and

(d) discharge in insolvency proceedings; and

(e) any other discharge of which the holder has notice when he takes the instrument.

In 12A O.S.1981, § 3–407 it states specifically that where there is an alteration, *"[a] subsequent holder in due course may in all cases enforce the instrument according to its original tenor, and when an incomplete instrument has been completed, he may enforce it as completed.*

In the present case, the Gosses argue the note is not negotiable in that it does not satisfy the "sum certain" requirement of § 3–104(1)(b) since in order to determine what the variable interest rate is, an outside source must be consulted. The term "sum certain" is not defined in the Code. However, 12A O.S. § 3–106 provides direction as to what a sum certain can be.

(1) The sum payable is a sum certain even though it is to be paid

(a) with stated interest or by stated installments; or

(b) with stated different rates of interest before and after default or a specified date; or

(c) with a stated discount or addition if paid before or after the date fixed for payment....

Additional language concerning the sum certain requirement is found in Comment 1 of 12A Okla.St.Ann.1981, § 3–106. These comments have not been adopted as part of the official statute, however, they can be referred to when interpreting questions arising under the Code. Comment 1 reads:

> It is sufficient that at any time of payment the holder is able to determine the amount then payable from the instrument itself with any necessary computation.... The computation must be one which can be made from the instrument itself without reference to any outside source, and this section does not make negotiable a note payable with interest 'at the current rate.'

We recognize the language insofar as the *unofficial comment* reads, would support the Gosses' contention that the note is not negotiable since an outside source must be consulted.

Additionally, Appellees argue this court has already ruled on what Oklahoma defines as a sum certain in an earlier case. *Shepherd Mall State Bank v. Johnson,*[5] held that "in order to be a negotiable instrument under the Code, the document must precisely meet the UCC definition of instrument under 12A O.S.1971, § 3–104." While this case certainly provides a starting point, it is not dispositive of the present case because the facts of *Shepherd Mall State Bank* are readily distinguishable. In that case, the guarantor had executed a standard form blanket guaranty which was later filled in by the bank. The guaranty at the time of execution did not contain the date of execution, the name of the bank, the name of the principal debtor nor the principal amount guaranteed. The court held that:

> The guaranty agreement contains an unconditional promise to pay all indebtedness which the debtor now is or may hereafter from time to time become obligated to pay, it does not contain a prom-

ise to pay a sum certain in money because the [principal] amount is adjustable; it is not payable on demand or at a definite time; nor is the document payable to order or to bearer.

Accordingly, we ruled it was not a negotiable instrument. This is unlike the present case where the only question presented was whether the note, having a stated principal amount with a variable interest rate evidences a sum certain. Moreover, as previously stated, section 3–104, while reciting that a note must contain a sum certain, does not define this term; therefore, it is up to this court to interpret what a "precise" definition of sum certain is under the Code.

We acknowledge that much scholarly and legal debate surrounds this issue and we would be remiss in not giving it considerable attention; this task we have conscientiously performed. We find, however, though there exists meritable argument on both sides of the question, we are persuaded the more rational, albeit difficult decision would hold the note is a negotiable instrument.

This court most recently held in *Farmers and Merchants National Bank v. Sooner Cooperative, Inc., State Guaranty Bank,*[6] "[the] drafters of the UCC intended that its provisions be construed to promote the purposes of the Code and the policy of the provision in question." Support for this is found in section 12A O.S.1981, § 1–102 which provides in part that:

> (1) This act shall be liberally construed and applied to promote its underlying purposes and policies.
>
> (2) Underlying purposes and policies of this act are governing commercial transactions;
>
> > (a) to simplify, clarify and modernize the law governing commercial transactions;
> >
> > (b) to permit the continued expansion of commercial practices through custom, usage and agreement of the parties;

5. 603 P.2d 1115, 1118 (Okla.1979).

6. 766 P.2d 325, 327 (Okla.1988).

(c) to make uniform the law among the various jurisdictions....

12A Okla.St.Ann.1981, § 1–102 comment 1 explains:

> The Act should be construed in accordance with its underlying purposes and policies. The text of each section should be read in the light of the purpose and policy of the rule or principle in question, as also of the Act as a whole, and the application of the language should be construed *narrowly or broadly*, as the case may be, in conformity with the purposes and policies involved.

(emphasis added).

■ If the intent of the Code was to aid in the continued expansion of commercial practices, then common sense would tell us that when faced with a widespread commercial practice, such as in the present case, this court should acknowledge it.

> The rule requiring certainty in commercial paper was a rule of commerce before it was a rule of law. It requires commercial, not mathematical, certainty. An uncertainty which does not impair the function of negotiable instruments in the judgment of business men ought not to be regarded by the courts.... The whole question is, do [the provisions] render the instruments so uncertain as to destroy their fitness to pass current in the business world?[7]

Adjustable interest rates are being routinely used in the commercial marketplace.[8] "Since 1980, VRN's [variable rate notes] have become increasingly popular. For example, in 1984 approximately 80 percent of new mortgages and 60 percent of all mortgages had variable rates."[9] While we are cognizant of the language of the Comment stating that it must not be necessary to refer to any outside source for the note to contain a sum certain on its face, we point to the *official language* of the Code which directs this court to liberally construe the act so as "to permit the continued expansion of commercial practices through custom, usage and agreement of the parties...."[10]

In the present case, the interest in this note was tied to the stated rate of interest as defined by the T-bill index. The note read:

INTEREST RATE CHANGES

(A) The Index

Changes in the interest rate will be based on changes in a measure of the cost of money called the "Index". The Index will be stated as a percentage figure. The Index will be the monthly average yield on U.S. Treasury securities adjusted to a constant maturity of one year as made available by the Federal Reserve Board. The Note Holder will make an Index substitution of (sic) at any time the Index being used ceases to be publicly announced by its source. The substituted Index will be used to determine the changes in my interest rate beginning with the first interest rate change after the substitution.

Any substituted Index will be beyond the control of the Note Holder and generally available to the public....

Before the advent of mass communication facilities offering ready access to such sources and the introduction of variable interest rates into the marketplace, the concern expressed by Comment 1 may have been justified, however, not so today.[11] Any stranger to the transaction under the

7. *Taylor v. Roeder*, 234 Va. 99, 107, 360 S.E.2d 191, 196 (1987) (Compton, J. dissenting) quoting *Cudahy Packing Co. v. State Nat. Bank*, 134 F. 538, 542, 545 (8th Cir.1904).

8. *Taylor*, 234 Va. at 107, 360 S.E.2d at 196 (Compton, J. dissenting); *see* Fiddler, *An Argument For The Alteration Of The UCC To Include Variable Rate Notes as Negotiable Instruments*, 9 J.L. & Com. 115 (1989); Hiller, *Negotiability and Variable Interest Rates*, 90 Com.L.J. 277 (1985) [hereinafter Hiller '85]; Hiller, *Variable Interest Rates and Negotiability: A Response*, 94 Com.

L.J. 48 (1989); Blodgett, *Variable–Rate Notes and the UCC*, A.B.A.J., August, 1988, at 26; *The Effect of Variable Interest Rates on Negotiability*, 48 La.L.Rev. 711 (1988).

9. Hiller '85, *supra* note 8 at 277.

10. 12A O.S.1981, § 1–102(2)(b).

11. Comment, *The Effect of Variable Interest Rates on Negotiability*, 48 La.L.Rev. 711, 717–19 (1988).

present set of facts, would not have been disadvantaged by the terms of the note, since the rate on the note could easily have been determined by making a simple phone call to check on the T-bill rate or refer to a published listing.[12]

■ Therefore, for this court to construe the note as anything other than negotiable would in our opinion thwart the basic mandate laid down by the drafters that the Code remain flexible and responsive to the business community. Moreover, we see it as our responsibility to recognize and adopt established business practices.

> "This Act is drawn to provide flexibility so that, since it is intended to be a semi-permanent piece of legislation, it will provide its own machinery for expansion of commercial practices. *It is intended to make it possible for the law embodied in this Act to be developed by the courts in the light of unforeseen and new circumstances and practices.*"[13]

To date, we find one other case illustrative of our reasoning. In *Klehm v. Grecian Chalet, Ltd.,*[14] an Illinois state appellate court held that the note at issue which contained a variable interest rate, satisfied § 3–104 and thus was negotiable. The note required payment of an interest rate at the "prime rate plus 2¾ percent." The note specified the date on which the interest rate would change. Prime rate was defined as "the minimum prime lending rate at either New York or Large Money Center Banks as published in the Wall Street Journal."[15] The court held the note was consistent with § 3–106(1)(b), even where the rate of interest varied on specified days.

We find the holding of this case persuasive in the case at bar. The note on its face stated what the "purported" rate of interest was, how it would change and on what date it would change. The interest rate was tied to the T-bill index plus a margin of 2½%. A sum certain could have been calculated if provided with the T-bill index.

There are two other cases analogous to our set of facts which further strongly support our finding the note was negotiable. In *Universal C.I.T. Credit Corp. v. Ingel,*[16] and *Woodhouse, Drake & Carey, Ltd. v. Anderson,*[17] the courts concluded that a note containing a provision for the interest rate to be paid "at the highest lawful or legal rate" would not result in the note being nonnegotiable for failure to state a sum certain since the provision merely promised to pay the definitely ascertainable maximum "legal rate." The point being, in both of these cases, it was necessary to go *outside* the document to determine the statutory legal rate of interest in order to ascertain the sum certain yet, the notes were negotiable in that the "maximum legal rate" was a *"stated"* interest rate for purposes of the Code.

Under the narrow set of facts presented, we hold the note in our case negotiable.[18] Because the business community considers such a note negotiable, it makes little sense for this court to find otherwise by focusing on a single line in the *unofficial* text of the Code where its *official* reasoning and purpose would direct us to conclude otherwise.

Of final note, as of May 1990, there is a proposed final draft for revising article 3 on negotiable instruments. Section 1–112(b) of the proposed draft reads as follows:

> Interest may be stated in an instrument as a fixed or variable amount of money or it may be expressed as a fixed or variable rate or rates. The amount or rate of interest may be stated or de-

---

12. *See Taylor,* 234 Va. at 107, 360 S.E.2d at 196.

13. 12A Okla.St.Ann.1981, 1–102 comment 1 (emphasis added).

14. 164 Ill.App.3d 610, 115 Ill.Dec. 662, 518 N.E.2d 187 (1st Dist.1987).

15. *Id.* at 619, 115 Ill.Dec. at 667, 518 N.E.2d at 192; *but see Farmers Production Credit Asso. v.*

*Arena,* 145 Vt. 20, 481 A.2d 1064 (1984); *Taylor v. Roeder,* 234 Va. 99, 360 S.E.2d 191 (1987).

16. 347 Mass. 119, 196 N.E.2d 847 (1964).

17. 61 Misc.2d 951, 307 N.Y.S.2d 113 (1970).

18. In so far as *Walls v. Morris Chevrolet, Inc.,* 515 P.2d 1405 (Okla.App.1973) is applicable, we hereby distinguish that court's holding.

scribed in the instrument in any manner and *may require reference to information not contained in the instrument....* [19]

As to the case at bar, we are comfortable that our's is a correct interpretation of the Code. However, we urge the legislature to review these proposed revisions and adopt such changes as would make our statutory law more responsive to current business practices.

### V.

We remand this case for a determination of FNMA's status as a holder in due course in light of our current ruling. The trial court heard testimony concerning who held the note, whether FNMA had "notice" of the alteration, and whether the note was negotiable. However, the trial court did not rule on these issues, rather it cancelled the note under 15 O.S. § 239. We find there is no dispute as to the question of whether FNMA is the holder of the note. Record on Motions, December 23, 1985 at page 8. Further, as to the first impression issue concerning the negotiability of the note, we find the note negotiable.

However, the trial court on remand must rule whether the testimony presented at trial proves FNMA was without "notice" of the unauthorized alteration pursuant to the Code. The test for determining when a person has notice of a claim applicable to the case at bar is set out in section 3–304(1)(a). The section reads:

(1) The purchaser has notice of a claim or defense if

(a) the instrument is so incomplete, bears such visible evidence of forgery or alteration, or is otherwise so irregular as to call into question its validity, terms or ownership or to create an ambiguity as to the party to pay;

Notice, as defined under the Code, is found in section 1–201(25). It states:

A person has "notice" of a fact when

(a) he has actual knowledge of it; or

(b) he has received a notice or notification of it; or

(c) from all the facts and circumstances known to him at the time in question he has reason to know that it exists.

On remand, the court will have to determine whether FNMA was without notice of the unauthorized alteration as defined by the Code. This is why we had to decide whether the alteration was material; if FNMA fails to prove on remand its holder in due course status, then 15 O.S.1981, § 239 would still be applicable.[20]

### VI.

The final issue presented for our determination is whether the court erred in awarding the Gosses attorney fees under 12 O.S.1981, § 936. That section provides:

In any civil action to recover on an open account, a statement of account, account stated, note, bill, negotiable instrument, or contract relating to the purchase or sale of goods, wares, or merchandise, or for labor or services, unless otherwise provided by law or the contract which is the subject to the action, the prevailing party shall be allowed a reasonable attorney fee to be set by the court, to be taxed and collected as costs.

The Court of Appeals reversed the trial court's award in so far as those fees were incurred in defense of FNMA's foreclosure action. FNMA argued and the Court of Appeals agreed, that because the court cancelled the note and mortgage, the foreclosure action was never presented for determination, hence the Gosses were not entitled to attorney fees. However, these questions have now been rendered moot in light of our ruling on the sum certain requirement of a negotiable instrument as

**19.** Appendix VI, U.C.C. (1991) Proposed Final Draft at 919 (emphasis added).

**20.** On remand of this cause for further proceedings, the trial court herein is instructed to reopen the case for the purpose of allowing the parties to present all relevant and admissible evidence which tends to prove or disprove whether appellant, Federal National Mortgage Association (FNMA) had such notice of irregularities in a certain note and mortgage made by appellees and assigned to it, as would defeat FNMA's status as a holder in due course of the said note and mortgage.

the Gosses have not yet satisfied the requirements of section 936 in successfully recovering on a note even if, as they argue, this section was intended to cover such an action.[21]

For the reasons specified, the Court of Appeals' opinion is VACATED; The Trial Court's order is AFFIRMED IN PART and REVERSED IN PART; and CAUSE REMANDED FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS PRONOUNCEMENT.

SIMMS, DOOLIN, HARGRAVE, KAUGER and SUMMERS, JJ., concur.

ALMA WILSON, J., concurs in part, dissents in part.

OPALA, C.J., and HODGES, V.C.J., dissent.

21. The trial court is further instructed to take all actions necessary to resolve by final order the counterclaim filed by FNMA herein to foreclose the said note and mortgage; and to make such other and further orders as are necessary to finally resolve all issues between the parties herein, including but not limited to orders in regard to an award of attorney fees and costs.