Michael L. DOYLE, Plaintiff–Appellant,

v.

RESOLUTION TRUST CORPORATION, as Receiver for Bright Banc Savings Association, Bright Mortgage Company; and Federal National Mortgage Association, Defendants–Appellees.

No. 92–6114.

United States Court of Appeals, Tenth Circuit.

July 15, 1993.

---

Jack S. Dawson (Clell I. Cunningham III, James A. Scimeca, and Kelly A. George of Miller, Dollarhide, Dawson & Shaw, with him on the brief), Oklahoma City, OK, for plaintiff-appellant.

Jeffrey H. Contreras (Linda G. Scoggins of Spradling, Alpern, Friot, Gum & Scoggins, with him on the brief), Oklahoma City, OK, for Federal Nat. Mort. Ass'n, defendants-appellees.

Before BRORBY and EBEL, Circuit Judges, and McWILLIAMS, Senior Circuit Judge.

McWILLIAMS, Senior Circuit Judge.

This case has a long history. It began when Michael L. Doyle brought an action based on breach of contract in the United States District Court for the Western District of Oklahoma in July 1983, naming as defendants Trinity Savings & Loan Association and other related entities (collectively referred to as "Trinity").[1] By amended complaint, Doyle added fraud claims against Trinity. The gist of Doyle's claims against Trinity was that Trinity had raised the interest rate of the adjustable rate note Doyle had previously executed in favor of Trinity without his consent. For this unauthorized alteration, Doyle sought actual and punitive damages. After discovering later that the Federal National Mortgage Association (FNMA) had purchased his note and mortgage from Trinity, Doyle filed a second amended complaint on August 24, 1984, adding FNMA as a defendant and seeking cancellation of the note and mortgage. .

After a trial in July 1986, the jury returned a verdict in favor of Doyle against Trinity, setting his actual damages at $3,757.60 and awarding him $100,000 as punitive damages. Judgment was entered thereon. Additionally, the court found in favor of Doyle on his claim against FNMA and entered judgment cancelling Doyle's obligation to FNMA. As will become apparent, in the present appeal we are not concerned, as such, with Doyle's judgment against Trinity. We are concerned only with Doyle's claim for cancellation of the note and mortgage held by FNMA.

Both Trinity and FNMA appealed the judgment thus entered. We affirmed the judgment in its entirety. *Doyle v. Trinity Savings & Loan Association*, 869 F.2d 558 (10th Cir.1989). In affirming the judgment for cancellation of the note and mortgage held by FNMA, we relied upon *Goss v. Trinity Savings & Loan Association*, No. 67,298, 1988 WL 391508 (Okla.Ct.App. filed August 23, 1988), which involved facts "virtually identical in all relevant respects to those underlying the instant suit." 869 F.2d at 559. We rejected FNMA's argument that it was a holder in due course, concluding that, under *Goss*, the note was nonnegotiable. In that connection, we spoke as follows:

> Finally, we reject FNMA's argument that it is a holder in due course of the note and thus entitled to enforce it despite the prior unauthorized alterations. This note, like the one in *Goss*, pegs the interest rate to an external index, so that the amount

---

1. The Trinity defendants were Trinity Savings & Loan Association, TSL Service Corporation, and STM Mortgage Company. Trinity changed its name to Bright Banc Savings Association in 1984. On February 2, 1990, Resolution Trust Corporation—Receiver became the successor in interest to Trinity and Bright Banc. STM Mortgage Company changed its name to Bright Mortgage Company in 1985 and merged with TSL Service Corporation. Consequently, Bright Mortgage is the successor in interest to STM and TSL.

payable cannot be determined from the instrument itself. "Because the note does not contain a promise to pay a sum certain, the note itself cannot be a negotiable instrument pursuant to [Okla.Stat. tit. 12A, § 3–104 (1981) ]. Therefore, FNMA cannot be accorded the status of a holder in due course." *[Goss]* at —— (citing *Shepherd Mall State Bank v. Johnson*, 603 P.2d 1115 (Okla.1979)).

869 F.2d at 560. Additionally, we rejected the argument that the alterations were not material, in reliance on *Goss.* 869 F.2d at 559.[2]

Trinity and FNMA filed petitions for rehearing in which they advised the court that the Oklahoma Supreme Court had granted certiorari in *Goss.* Accordingly, we abated the case pending the Oklahoma Supreme Court's decision. In 1991, the Oklahoma Supreme Court reversed, in part, the Oklahoma Court of Appeals. *Goss v. Trinity Savings & Loan Association*, 813 P.2d 492 (Okla.1991).

Thereafter, on July 26, 1991, we filed an opinion on rehearing. *Doyle v. Trinity Savings & Loan Association*, 940 F.2d 592 (10th Cir.1991). We denied Trinity's petition for rehearing, rejecting Trinity's contention that we had incorrectly held the alteration of the note was material, and in connection therewith, we stated that the Oklahoma Supreme Court in *Goss* had "settled this issue by declaring an analogous note alteration to be material as a matter of law."

FNMA's petition for rehearing challenged our reliance on the Oklahoma Court of Appeals' holding in *Goss* that the variable interest rate in the note rendered the note nonnegotiable. In our opinion on rehearing, we noted the Oklahoma Supreme Court's reversal of the Oklahoma Court of Appeals' decision in *Goss* that the note was nonnegotiable. We stated that "[b]ecause the note in *Goss* was declared negotiable under Oklahoma law, FNMA would be a holder in due course, entitled to enforce the note despite the unauthorized alteration, if it could establish that it took the note without notice of the defect." 940 F.2d at 593. We further noted that the Oklahoma Supreme Court had remanded *Goss* to the trial court with direction that it determine whether FNMA purchased the note from Trinity without notice of the unauthorized alteration of the interest rate. *Id.*[3]

In line with the Oklahoma Supreme Court's pronouncement in *Goss*, we spoke in our opinion on rehearing in the instant case as follows:

> *Goss* controls our opinion on rehearing. We thus hold that the variable interest rate note in our case was negotiable. *We decline Doyle's invitation to further hold that FNMA had notice of the alteration as a matter of law*, and we remand for the trial court to make that determination in accordance with the opinion in *Goss*, 813 P.2d at 500–01, 62 Okla. Bar J. at 796, as amended on rehearing, 62 Okla. Bar J. 1779 (Okla.S.Ct.1991) (emphasis added).

*Id.*[4]

On remand, the district court in the present case held an evidentiary hearing, and then found, *inter alia*, that FNMA did not have actual knowledge of the unauthorized alteration by Trinity of the note's interest rate, nor did it have reason to know that the note had been altered without Doyle's knowledge or consent. In line therewith, the district court concluded that FNMA was a hold-

**2.** In this initial opinion in *Doyle*, we stated that it was a relevant and undisputed fact that FNMA "purchased the loan in good faith" and "had no reason to believe that Doyle had not approved and initialed the changes." 869 F.2d at 559. Hence, FNMA's "good faith" became the law of the case.

**3.** We are advised that, on remand, the trial court in *Goss* found that FNMA had notice of the defect and that the matter is now on appeal.

**4.** In our opinion on rehearing, we did not in anywise modify the statements in our original opinion that FNMA purchased the Doyle note in "good faith" and that FNMA "had no reason to believe that Doyle had not approved and initialed the changes." So, these statements continued as the law of the case, not subject to challenge on our remand to the district court to consider the question of whether FNMA had notice, be it actual or constructive, of an *unauthorized* alteration. And, as above noted, in our opinion on rehearing, we specifically rejected Doyle's suggestion that FNMA had such notice as a matter of law.

er in due course of Doyle's note and could enforce the note, as originally executed, free from any claims or defenses Doyle might have against Trinity. Doyle appeals that order. We affirm.

The background facts out of which this controversy arose are to a large degree not in any real dispute. On March 15, 1982, FNMA entered into a written "Letter of Commitment" with Trinity whereby it agreed to purchase from Trinity up to $5,000,000 worth of loans. As a part of the purchase agreement between Trinity and FNMA, Trinity represented and warranted that the notes and mortgages it submitted to FNMA for purchase would be valid and fully enforceable. Trinity first sent a "package" of loans to FNMA for purchase around June 22, 1982. Doyle's loan was not included in this first package. FNMA refused to buy Trinity's first package of loans when a dispute arose over whether the correct interest rate had been typed in the blank on the notes where the interest rate was to be placed.[5]

On June 22, 1982, Doyle borrowed $54,000 from Trinity to purchase a home and, in connection therewith, signed a note providing for an interest rate of 11.375% per annum. At the first trial of this matter, Doyle proved that sometime after he signed the note Trinity altered it by "whiting out" the interest rate of 11.375% and inserting an interest rate of 15.875%, and then forging his initials next to the altered interest rate. Doyle's note and mortgage, along with others, were then sold to FNMA on or about September 27, 1982.

At the hearing on remand, it was FNMA's position that, while it knew that the interest rate had been altered, it did not know that the alteration was unauthorized, and in fact believed that it was authorized because the initials "MLD" appeared next to the alteration. In this connection, it was established that under FNMA practices then in effect, FNMA employees would have checked to see that, for example, the initials "MLD" were indeed the correct initials of the maker of the note, "Michael L. Doyle," but would not have made a handwriting comparison to see if the initials matched the full written signature.

Sue Smith, an employee of FNMA, testified that FNMA frequently purchased notes and mortgages where the interest rate had been altered, providing the maker's initials appeared alongside the alteration. On cross-examination of Sue Smith, counsel attempted to show that the initials appearing next to the altered interest rate did not match Doyle's signature on the note. When shown a copy of the Doyle note, Sue Smith stated that the initials "M" and "D" were not "identical" to those letters as they appeared in the maker's signature. In like vein, Fred Horak, another employee of FNMA, when shown a "blown-up" copy of the initials next to the alteration, stated that there was a "difference" between the initials and the signature. Both witnesses testified that they were not handwriting experts and that the only check routinely made by FNMA was to ascertain that the initials alongside any alteration contained the same letters as the first letters of the maker's signature.

On this general state of the record, the district court, on remand, found that FNMA did not have actual knowledge that the initials were a forgery, nor did it have reason to know that the note had been altered without Doyle's knowledge and consent. In so holding, the district court spoke as follows:

The remand from the Court of Appeals directed this Court to determine whether FNMA lacked notice of the unauthorized alteration of the Doyle note by Trinity. This determination is to be made in accordance with the opinion of the Oklahoma Supreme Court in *Goss v. Trinity Sav. & Loan Ass'n*, 813 P.2d 492 (Okla.1991).

In his pre-trial pleadings and throughout the bench trial of this matter, Doyle has contended that FNMA had notice of or a duty to inquire about the corrected interest rate on his note. Specifically, Doyle claimed that FNMA failed to follow its own

---

5. In our initial opinion, we stated as a relevant and undisputed fact that FNMA rejected Trinity's first package "because the instruments had been incorrectly completed by placing on the face of the note, as the initial interest rate, the lower rate of interest upon which the initial monthly payment was based (11.375%), instead of the actual rate of interest accruing for one year from the date of execution (15.875%)." 869 F.2d at 559.

procedures in its dealings with Trinity on Doyle's note, that FNMA knew that Trinity had submitted a number of loans that needed to be corrected, and that someone at FNMA should have been able to discern that the initials next to the corrected interest rate on his note were not similar in appearance to the handwriting in Doyle's signature elsewhere on the note.

. . . .

One need only examine the undisputed facts of the present case to demonstrate that FNMA is indeed entitled to holder in due course status. A number of the undisputed facts are found in paragraphs 4 through 7 of Judge Lee R. West's Order of 11 June 1985, and are confirmed by this Court based upon the evidence heard in the bench trial of this matter. *See, Doyle v. Trinity, et al.*, CIV–83–1736 (Order of West, J. 11 June 1985), at 2–3.[6]

Additionally, FNMA has convinced the Court through evidence offered at trial that the type of correction that appeared on the Doyle note was quite common and not a matter about which FNMA would concern itself unless other factors called the correction to FNMA's attention. No additional factors were present here. In fact, FNMA has established that Trinity had a fine reputation in the mortgage banking community at the time the Doyle note was purchased, and FNMA had every reason to trust Trinity to correct the problem notes and resubmit them in accordance with FNMA policies and procedures.

When viewed as a whole, the facts of this case demonstrate that FNMA purchased the Doyle note in good faith and without notice of the unauthorized interest rate alteration. As such, FNMA is entitled to holder in due course status with regard to the Doyle note.

Several Oklahoma statutes bear on the present controversy. 12A O.S.1981 § 3–302 provides as follows:

(1) A holder in due course is a holder who takes the instrument

(a) for value; and

(b) in good faith; and

(c) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person.

12A O.S.1981 § 3–304 provides as follows:

(1) The purchaser has notice of a claim or defense if

(a) the instrument is so incomplete, bears such visible evidence of forgery or alteration, or is otherwise so irregular as to call into question its validity, terms or ownership or to create an ambiguity as to the party to pay;

12A O.S.1981 § 1–201(25), provides as follows:

A person has "notice" of a fact when

(a) he has actual knowledge of it; or

(b) he has received a notice or notification of it; or

(c) from all the facts and circumstances known to him at the time in question he has reason to know that it exists.

In line with the foregoing statutes, it is Doyle's position in the present appeal that the Doyle note bore "such visible evidence of forgery or alteration . . . as to call into question its validity" and that, "from all the facts and circumstances known to [FNMA] at the time in question [FNMA had] reason to know" that the initials were forged, even though it may not have had actual knowledge of such.

While the standard for determining a holder's good faith is subjective, the test for determining whether a holder had "no-

**6.** By his order of June 11, 1985, Judge West denied FNMA's motion for summary judgment on the ground that the note itself was non-negotiable. However, in so doing, in paragraphs 5 and 6 of that order, Judge West found the following to be uncontroverted for the purposes of the motion:

5. FNMA had no reason to believe that the initials on the face of the note may have been

placed there by someone other than the plaintiff. Therefore, FNMA believed that the changes had been approved and agreed to by the plaintiff.

6. FNMA purchased the loan in good faith and with no knowledge of any potential claims or defenses to it including claims of alteration, fraud or forgery.

tice" of defenses against the instrument is an objective inquiry into what a reasonable person in the holder's position would know. *See generally,* 1 White & Summers, *Uniform Commercial Code,* § 14–6, pp. 708–17 (3d ed.1988). As we said in our opinion on rehearing, whether FNMA had notice of the forgery of Doyle's initials is an issue of fact and not an issue of law. The district court's finding that FNMA had no actual or constructive notice of the forgery is presumptively correct and should not be set aside on appeal unless it is clearly erroneous. *Colon–Sanchez v. Marsh,* 733 F.2d 78, 81 (10th Cir.), *cert. denied,* 469 U.S. 855, 105 S.Ct. 181, 83 L.Ed.2d 115 (1984). A finding of fact will be deemed clearly erroneous only if it is without support in the record or if the appellate court "on the entire evidence is left with the definite and firm conviction that a mistake has been made." *Id.; see also N.L.R.B. v. Viola Industries—Elevator Division,* 979 F.2d 1384, 1387 (10th Cir.1992).

Our study of the record before the district court leads us to conclude that the district court's finding that FNMA was without notice was not clearly erroneous. There is *no* evidence that FNMA had actual notice that Trinity had unilaterally changed the interest rate in the note which Doyle signed and then forged Doyle's initials beside the alteration. While FNMA and Trinity did confer after the first package of loans had been rejected as to how the interest rate could be "corrected," there is *no* evidence that FNMA suggested that Trinity change interest rates *without* the knowledge and consent of the maker. The initials beside the altered interest rate on Doyle's note were the same as the first letters of Doyle's signature on the note. The FNMA employees' testimony that the initials looked a bit different than Doyle's signature does not dictate reversal. FNMA obligated itself to buy loans from Trinity in wholesale lots up to the amount of $5,000,000, and it is undisputed that many of these loans with altered interest rates were routinely accepted by FNMA, providing that the borrower's initials appeared beside the alteration. On the basis that the district court's findings are not clearly erroneous, we affirm.

In addition to finding that FNMA did not have notice of the forged initials, the district court also found that FNMA acquired the note in good faith, had no "close connection" with Trinity and, specifically, that Trinity was not an "agent" for FNMA. In the present appeal, Doyle argues that the district court erred in so holding. Since our remand was for the limited purpose of determining whether FNMA had notice of the forged initials appearing alongside the altered interest rate in the Doyle note, we need not consider these other matters.

Judgment affirmed.