# UNITED STATES COURT OF APPEALS

<u>**Filed 10/1/96**</u>

## TENTH CIRCUIT

---

HELEN GREY TRIPPET; HELEN
GREY TRIPPET, Custodian for Leslie
S. Murphy and Mark Murphy;
ROBERT S. TRIPPET, Guardian of
Virginia Trippet; MARY SUSAN
TRIPPET; CONSTANCE S.
TRIPPET; FLO HEDLEY NORVELL;
RUSSEL SIMPSON NORVELL,
Executors of the Estate of Alberta
Simpson Matterson,

      Plaintiffs-Appellees/
      Cross-Appellants,

v.

TRI TEXAS, INC., a Florida corpora-
tion, now known as EnvirOmint
Holdings, Inc.; CHARLES S.
CHRISTOPHER,

      Defendants-Appellants/
      Cross-Appellees,

      and

HOME-STAKE OIL AND GAS
COMPANY, HOME-STAKE
ROYALTY and JARREL B.
ORMAND,

      Defendants.

Nos. 95-5005, 95-5009
(D.C. No. 92-C-192-E)
(N.D. Okla.)

# ORDER AND JUDGMENT*

Before **SEYMOUR**, Chief Judge, **TACHA** and **EBEL**, Circuit Judges.

I.

Helen G. Trippet, on her own behalf and as Custodian for Leslie S. Murphy and Mark Murphy; Robert S. Trippet, as Guardian of Virginia Trippet; Mary S. Trippet; Constance S. Trippet; and Flo H. Norvell and Russell S. Norvell, as Executors of the Estate of Alberta S. Matterson,[1] brought this contract action against EnvirOmint Holdings, Inc., f/k/a Tri Texas, Inc., Charles S. Christopher, Jarrell B. Ormand, Paine Webber, Inc., Home-Stake Oil and Gas Co., and Home-Stake Royalty Corp.[2] In a thorough opinion, the district court recited the pertinent facts, which will not be repeated here. In summary, the Trippets alleged breaches of contract, promissory note and guaranty agreement, fraud in the

---

*This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions 10th Cir. R. 36.3.

[1] We will address plaintiffs collectively as the Trippets.

[2] Mr. Ormand, Paine Webber and the Home-Stake companies were dismissed prior to trial. We will address Tri Texas and Mr. Christopher collectively as Tri Texas.

inducement, and conversion of property. They sought rescission of the contracts and declaratory relief as to the true owners of certain stock and related dividends. Helen Trippet also alleged Tri Texas was indebted to her as a surety on a related bank loan. Tri Texas counterclaimed alleging breach of contract and tortious interference with a business relationship. Following a bench trial, the district court found that Tri Texas breached material obligations. Accordingly, the court rescinded the contracts and decreed the Trippets the rightful owners of all stock at issue. The court also found in favor of Helen Trippet on the promissory note and surety claims. The court rejected the Trippet's fraud claims and Tri Texas' counterclaim in their entirety. Both parties appeal.

Tri Texas contends on appeal the district court erred in finding that registration was the object of the contract, that failure to file a registration statement was a material breach, that the contract was breached regardless of whether there was an enforceable oral agreement, and that the district court incorrectly relied on the opinion of a Trippet expert witness in finding that Tri Texas never intended to file a legitimate registration. We address these issues first.

II.

A.

"In a contract action, our review of findings regarding a breach of the contract is controlled by the clearly erroneous standard. Additionally, when extrinsic evidence is introduced to ascertain the meaning of contract terms, . . . the trial court's interpretation . . . is factual and cannot be set aside unless clearly erroneous." Chaparral Resources, Inc. v. Monsanto Co., 849 F.2d 1286, 1289 (10th Cir. 1988) (citations omitted). Under this standard, the trial court's findings "will be deemed clearly erroneous only if [they are] without support in the record or if the appellate court 'on the entire evidence is left with the definite and firm conviction that a mistake has been made.'" Doyle v. Resolution Trust Corp., 999 F.2d 469, 474 (10th Cir. 1993)(quoting Colon-Sanchez v. Marsh, 733 F.2d 78, 81 (10th Cir.), cert. denied, 469 U.S. 855 (1984)). Moreover, "[i]f a trial is to the court, . . . the resolution of factual issues and conflicting evidence lies solely within the province of the district court." Raydon Exploration Inc. v. Ladd, 902 F.2d 1496, 1499 (10th Cir. 1990)(citations omitted).

Breach of contract may serve as grounds for rescission in two circumstances. First, rescission may be obtained where a failure of performance defeats the object of the contract or performance is an essential part of the bargain. Id. at 1500. Second, rescission is available where there is a total failure

of consideration because the promised performance fails as a result of some supervening cause after an agreement is reached, River Prod. Co. v. Webb (In re Topco, Inc.), 894 F.2d 727, 742 (5th Cir. 1990), or a partial failure of consideration if the failure defeats the object of the contract, Davis v. Gwaltney, 291 P.2d 820, 823-24 (Okla. 1955). Tri Texas does not argue that the district court incorrectly stated the applicable law;[3] we therefore review the numerous arguments under the clearly erroneous standard.

## B.

Tri Texas first contends that the object of the contract was to gain control of the Home-Stake companies and not the registration of Tri Texas stock. The district court found that the terms of the contracts required Tri Texas to register shares of stock issued to the Trippets, additional shares to be issued to the Trippets, and shares to enable the purchase of Home-Stake company shares through the exercise of options. There was evidence that registration was the object of the contracts. The terms of the contracts reference the above requirements, Aplt. App. at 1472, 1572, and state that the purpose of the registration was "to enable the Shareholders to make a public distribution of the Initial Shares and/or Additional Shares at all times," id. at 1472, 1588.

_____

[3] Tri Texas disagreed with the district court's conclusion that Oklahoma law determined the remedy available, but did not challenge the court's conclusion that Texas law yielded the same result.

Moreover, the contracts state "[t]here is no certainty that [Tri Texas] will be successful in connection with" acquiring control of the Home-Stake companies, id. at 1476, and provide that Tri Texas may "elect[] to satisfy its obligations . . . by making a cash payment" to the Trippets, id. at 1470. The contract thus required Tri Texas to perform by paying the Trippets for their stock even if control was not gained. More importantly, one of the defendants testified that registration would facilitate the end result of "selling stock." Id. at 1117. We conclude there was ample evidence to support the district court's conclusion that the object of the contracts was the registration of Tri Texas stock.

Tri Texas next argues the court erred in finding that the failure to file the registration was a material breach.[4] We conclude the district court's finding that registration was the object of the contracts necessarily renders the failure to register a material breach. Our conclusion is strengthened by Tri Texas' numerous requests to extend the registration deadline, see Aplt. App. at 611, 2338, 2339, "to avoid being in default," id. at 2640. The requests also refute Tri Texas' argument that registration was worthless and irrelevant regardless of

---

[4] Tri Texas necessarily challenges only the materiality of the breach, having conceded that no registration was filed prior to December 31, 1991, Aplt. App. at 1232, and that the only subsequent attempt was "nothing more than Tri Texas' effort to finesse Mr. Trippet into withdrawing his demand for rescission," Aplt. Br. at 44.

whether control was attained.[5] The court's finding that the failure to register was a material breach was not clearly erroneous.

Tri Texas also contends the district court erred when it found there was a breach of contract regardless of whether there was an enforceable oral agreement. The terms of the alleged oral agreement were disputed. The court found that the Trippets conditioned any oral agreement on its reduction to a writing and that they never approved such a writing. Mr. Trippet testified that during the oral negotiation he stated he would agree to an extension if there was a "quid pro quo." Aplt. App. at 611. The negotiations ended before a mutually agreeable writing was executed and Mr. Trippet stated he would recommend any future writing be approved if he "liked it." Id. at 613. Tri Texas did not produce any evidence that a writing was ever approved. While the court did not explicitly conclude the oral agreement was unenforceable, that is the only possible inference from its findings,[6] and therefore the court's finding is not clearly erroneous.

Finally, Tri Texas contends the court erred in finding that it never intended to file a legitimate registration because the court incorrectly relied on the opinions

---

[5] Tri Texas argues in its brief that registration was "worthless" unless it gained control, Aplt. Br. at 39, and also that the "registration statement would be irrelevant if Tri Texas gained control," id. at 46.

[6] Because the verbal agreement was unenforceable, we need not address Tri Texas' argument that the Trippet's rescission letter, Aplt. App. at 2261-64, constituted the first material breach.

of a Trippet expert witness. However, the record contains other evidence that Tri Texas never intended to file the registration statement. Most importantly, Tri Texas conceded that "we didn't attempt to file the registration statement by the end of 1991," Aplt. App. at 1232, see also Aplt. Rep. Br. at 10, and that the only subsequent filing was a sham, Aplt. Br. at 44. In addition, the SEC responded with a 10 page summary of the inadequacies of the subsequent filing. The court relied upon both the filing and the SEC response. We hold that there was sufficient evidence to support the court's finding that Tri Texas did not intend to file a legitimate registration.[7]

In her cross appeal, Helen Trippet contends the district court erred in failing to grant judgment to her for reimbursement of attorney's fees are paid to Pavillion Bank, contending she is entitled to the fees as a surety under Okla. Stat. tit. 15 § 381 (1993). We disagree. When Pavillion Bank attempted to sell Mrs. Trippet's collateral on the related bank loan, she initiated suit against the bank to enjoin the sale, alleging she was not a surety because of the bank's participation in fraud and misrepresentation. The court in that case entered judgment against Mrs. Trippet and ordered her to pay Pavillion Bank's court costs. Thereafter,

---

[7] Tri Texas also argues that to determine the materiality of a "timing" breach the court is required to measure the quality of efforts to perform against the agreed-upon date and circumstances. When the district court found that Tri Texas did not intend to file a legitimate registration it necessarily found that Tri Texas did not use its best efforts.

Mrs. Trippet agreed to pay Pavillion Bank's attorney's fees in the fraud suit when she purchased the note on the bank loan. The district court did not err in declining to order reimbursement of the attorney's fees because the fees were not incurred "satisf[ying] the principal obligation," Okla. Stat. tit. 15, § 381 (1993), but instead in an affirmative attempt to avoid satisfying the principal obligation.

Because we affirm the district court in favor of the Trippets on Tri Texas' appeal, we need not address the remaining issues raised in Trippet's cross appeal. The decision of the district court is **AFFIRMED**.

SUBMITTED FOR THE COURT

Stephanie K. Seymour
Chief Judge